# Board of Revenue *v.* Barber.

## *Prohibition.*

1. *Court of county commissioners; authority of.*—The court of county commissioners in contracting for the support of the poor, has no authority to make it a term of the contract, that the probate judge shall draw his warrant on the treasurer for the amount accruing monthly, without due audit and allowance by the commissioners' court in term time.

2. *Legislature; power of, over local concerns.*—In the absence of some constitutional restriction, either direct or arising by necessary implication, the legislative department of the State has full authority to interfere in the management of local concerns, and may in its discretion, intrust such matters to officers elected by the people of the particular district, or provide for their appointment otherwise.

3. *"Act to establish board of revenue for Montgomery county"; constitutionality of.*—The "act to establish a board of revenue for Montgomery county," approved March 11th, 1875, providing for the appointment of the members thereof by the governor, instead of their election by the voters of the county, is not violative of any constitutional provision; nor does it embrace any provisions foreign to the one subject expressed in the title.

APPEAL from Circuit Court of Montgomery.
Tried before Hon. JAS. Q. SMITH.
The opinion states the case.

STONE & CLOPTON and D. S. TROY, for appellants.

RICE, JONES & WILEY, *contra.*

MANNING, J.—Appellee, Barber, contracted in Febru-

[Board of Revenue *v.* Barber.]

ary, 1875, with the court of county commissioners of Montgomery county for the support of paupers therein, and the burial of such as should die, during the period of one year from and after the 2d day of March, 1875, at the price and rate of fifty-five cents a day for each one, payable monthly by warrants of the judge of probate upon the county treasurer. This was the contract according to the proposal of Barber, who was to furnish everything, medicines, medical care, clothing, beds, &c., as set forth in the minute of the court reciting the proposal and assenting to it, and according to the written agreement signed afterwards.

After giving this assent, and authorizing the judge of probate to enter into the contract for the county, and requiring of Barber a bond with sureties for the performance of his part of the agreement, the minute entry of the commissioners court proceeds as follows: "It is further ordered that the judge of the probate court issue to the said Robert Barber, monthly, a warrant on the county treasurer for the amount due him for such month, upon said judge being furnished by him with a statement in writing and under oath of the amount of his claim for such month." This latter clause was not a stipulation of the contract, either as proposed or as finally written out, but an order on the minutes of the court of county commissioners.

That court, at the time, had authority with respect to the poor (R. C. § 1446), and the judge of probate was the proper officer to draw warrants on the county treasury for the payment of county debts—but not until the claims out of which they grew had been audited by the commissioners' court in term time. This the law expressly provides, and also that "every claim or such part thereof, as is allowed, must be registered in a book kept for that purpose." R. C. § 907. These regulations prescribed by law for the protection of the public from peculation could not be set aside either by the contract, or an order of the court of county commissioners; which in such matters, was not a judicial tribunal but an administrative body, like a board of directors, whose duty it was to manage the affairs of the county according to law.

Notwithstanding, therefore, the above order of this commissioners court, the probate judge had no authority to issue a warrant upon any claim until it had been audited as aforesaid, nor for any other sum than "for the amount so allowed." (§ 907, *supra*). No man is permitted to obtain the public moneys or to dispose of them, except as the law prescribes. The matter is too clear for dispute.

[Board of Revenue v. Barber.]

On the 11th of March, 1875, a statute was enacted entitled "an act to establish a board of revenue for Montgomery county," to be composed of five persons appointed by the governor; which board should have authority among other things, "to examine, settle and allow all accounts and claims chargeable against the county"; to examine and audit the accounts of all officers having the care, management, collection or disbursement of money belonging to the county, or appropriated for its use and benefit," (§ 3), "to examine into and pass upon the legality of warrants already issued;" and "to classify and register outstanding warrants." (§ 6). It was also enacted therein, that "no funds belonging to the county shall be drawn except as authorized by said board, and a proper list and registry of all sums drawn, and of the nature of the claim, and of the person in whose favor drawn, shall be kept by the clerk of said board." (§ 9).

By a subsequent act of March 19th, 1875, "in relation to the finances of Montgomery county," it was enacted: "That said board of revenue shall have all the power and authority in reference to the levy and collection of taxes, the custody and control of the funds or property of the county and the control and provision for the paupers of said county, and in reference to claims against the county heretofore exercised by the court of county commissioners of said county," &c.

The appellants in this cause, five citizens of Montgomery county, appointed in pursuance of said act of March 11th, by the governor, compose said board of revenue, and having organized and entered upon the performance of their duties as such, afterwards, on the 12th of April, 1875, by order enterened on the minutes of the board and served upon F. Wolffe, the county treasurer, required him to render to the board his accounts up to the 19th day of March, 1875, showing what amount of money he had on hand that day, and to furnish the board a statement of all the moneys received by him as such treasurer after that time, from whom obtained and in what kind of money received, and warned him not to pay out any moneys as treasurer afterwards, unless by order of the board, through the direction of the clerk or president thereof. And on the 26th of the same month, April, appellee, Barber, was in like manner required by the board to report to it, what number of paupers he had in charge, the name, age and condition of each, and how long, and by whose order, and whether such order was verbal or in writing, each pauper had been kept at the expense of the county, and to take notice that he should not thereafter re-

[Board of Revenue v. Barber.]

ceive any paupers as a charge upon the county, except upon a written order from the board."

It does not appear that any attention was paid to these requisitions and notices. And on the 1st of May, afterwards, Judge Buckley, judge of probate of Montgomery county, issued to appellee Barber a warrant on the treasurer of the county for $1,261 70, payable to Barber on his contract aforesaid for the support of paupers during the month of April, without the claim therefor having been examined or audited or allowed by either the board of revenue or the court of county commissioners.

This warrant the treasurer declined to pay upon the ground only, that he had received the notice before referred to from the board of revenue, whereupon application was made by Barber to the Hon. James Q. Smith, judge of the 2d judicial circuit, complaining of this interference of the board of revenue, charging that its proceedings and existence were without warrant of constitutional law, and praying that a writ of prohibition issue to restrain its action. The cause was determined upon a demurrer of appellants to the petition or application of Barber, and a demurrer by Barber to an answer of appellants, setting up their appointment by the governor and their organization and authority as a board of revenue under and by virtue of said acts of March 11th and 19th, 1875. The former demurrer was overruled and the latter sustained by the court, and appellants declining to answer over the court adjudged that appellants "had no jurisdiction or authority as a board of revenue, or as members of such board, or otherwise, to interfere with or hinder the performance of the contract between said Barber and the court of county commissioners," and ordered a writ of prohibition to be issued to them commanding them to refrain from all such interference "either past, present, or future," and that they pay the costs of the proceedings. From which judgment and orders an appeal was taken to this court.

On behalf of Barber, the appellee, it is contended that the act establishing the board of revenue is not valid, because it violates the constitution in providing that the members thereof may be appointed by the governor, instead of being elected by the people of the county in which the board is to exercise authority, and because it embraces more than the one subject mentioned in the title.

In reference to the first point, no section of the constitution is designated with which the act is supposed to be in conflict. And we cannot better express our own views

[Board of Revenue *v.* Barber.]

thereon than in the language of Mr. Cooley in his very valuable work on Constitutional Limitations : "The rule of law upon this subject appears to be, that except where the constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not in the particular case." (Page 168 of 3d' Ed.) "It is also a maxim of republican government that local concerns shall be managed in the local districts, which shall choose their own administrative and public officers, and establish for themselves police regulations. But this maxim is subject to such exceptions as the legislative power of the State shall see fit to make, and when made it must be presumed that the public interest, convenience and protection are subserved thereby. The State may interfere to establish new regulations against the will of the local constituency, and if it shall think proper in any case to assume to itself those powers of local police which should be executed by the people immediately concerned, we must. suppose it has been done because the local administration has proved imperfect and inefficient, and regard to the general well-being has demanded the change. In these cases the maxims which have prevailed in the government address themselves to the wisdom of the legislature, and to adhere to them as far as possible, is doubtless to keep in the path of wisdom ; but they do not constitute restrictions so as to warrant the other departments in treating the exceptions which are made as unconstitutional." (Page 170). See also *People* v. *Draper*, 15 N. Y. 547 ; *People* v. *Mahany*, 13 Mich. 500 ; *President, &c.* v. *Ex rel Board, &c.*, 45 Ala. 399.

It must be a matter of profound regret to every patriotic and thoughtful citizen that a state of things should exist which seems to the legislature to require, as in this case, that the people of a county or city should not be entrusted with the election of officers who are to have charge of its local affairs. But it is well settled that the courts must conclude that "a regard to the general well-being has demanded the change," and justifies the law in creating it.

The second objection to the act establishing this board of revenue was, that it is in conflict with the clause of the constitution : "Each law shall contain but one subject, which shall be clearly expressed in its title ;" which clause is supposed to be violated by the 4th section of the statute, enacting : "That the said board shall exercise the same supervising control over the tax collector and tax assessor of said county, their bonds and removal from office, as is now required by law of the commissioners of said county."

38

It seems to us that these are duties very appropriately belonging to a board of revenue, and clearly pertaining to the subject indicated in the title. To a similar objection, under the like clause in the constitution of Michigan, made in *The People* v. *Mahany,* the court, by Judge Cooley, answered: "The general purpose of this act is 'to establish a police government for the city of Detroit.' It would be difficult to express it better or more concisely than it is expressed by the title. To accomplish this general object, officers are authorized to be appointed, who shall take upon themselves certain duties before performed by other officers, as well as certain new duties now created, and who are authorized to appoint and govern a force. The act with great particularity prescribes how this police government shall be rendered effectual; but this particularity cannot possibly be objectionable, so long as it introduces nothing foreign and incongruous, but is confined to the means supposed to be important to the end indicated." We could not have framed any more appropriate answer to the like objection in the cause before us.

The objections urged against the validity of the act creating the board of revenue of Montgomery county are not sound in law, and are overruled.

The only other point insisted on by counsel for the appellee, Barber, is one before glanced at, that one of the terms of his contract with the court of county commissioners was, that the judge of probate should "issue to him monthly a warrant on the county treasurer, for the amount due him for such month, upon said judge being furnished by him with a *statement in writing and under oath,* of the amount of his claim for such month."

We have seen before that not only was the latter part of this order not a stipulation of the contract in fact, but that under the law no such contract could be made. The judge of probate had at that time no more right to issue a warrant for the amount of a claim not examined, audited and allowed by the court of county commissioners, than the treasurer had to pay it without its having been allowed, or a warrant issued for it. Nobody can contract to pay out, or issue warrants for public moneys, except as authorized by law; and especially not upon a mere written statement of the *amount,* (without items) under oath, (whose oath?) of the claim. The duty of examining, auditing, and being satisfied of the correctness of a claim against the county treasury, before allowing it, is one not to be lawfully shunned or bargained away.

The judgment of the circuit court is reversed and the application for a prohibition dismissed, at the costs of the appellee Barber in this court and in the circuit court.

STONE, J., not sitting.