# Davis v. The State.

*Indictment for Transporting or Moving Seed Cotton, by Night.*

1. *Legislative power; its extent and the limitations upon it.*—It is a fundamental principle in the organization of the several States of the Union, that the Legislature of each has the same unlimited power of legislation that resides in the British Parliament, except as restrained by the provisions of the Constitution, Federal and State; and subject to the qualification, by necessary implication, that its acts must be purely legislative in their character, and not judicial, nor executive.

2. *Same; as to passage of local laws.*—There is no constitutional provision, State or Federal, which inhibits the passage of local laws, operating in certain named counties only, or within a specified territorial district, different from the general laws which operate in the other parts of the State.

3. *Juries; act of December 19, 1876, as to drawing, in certain counties, not unconstitutional.*—The act approved December 19, 1876, entitled "An act to secure more effectually competent and well qualified jurors in the counties of Montgomery, Lowndes, Autauga, Dallas, Perry, and Bullock," which authorizes the Governor to appoint five commissioners in each of said counties, who are authorized to "discharge and perform, in their respective counties, all the duties in relation to the [s]election and drawing of grand and petit jurors, now required by law to be performed by the judges of probate, sheriffs, and clerks of the Circuit and City Courts of said counties,"—is not violative of any constitutional provision or principle of legislation.

4. *Cotton in the seed; act of February 1, 1879, forbidding transportation of, by night, not unconstitutional.*—The second section of the act approved February 1st, 1879, entitled "An act to prevent, in certain cases, the sale, exchange, and transportation of cotton, in the counties of Montgomery, Dallas," &c., which declares, "that it shall not be lawful for any person to transport or move, after sunset and before sunrise of the succeeding day," within the specified localities, "any cotton in the seed," but permits the owner or producer to remove it from the field to his gin-house, or other place of storage,—is a mere police regulation, not an unauthorized interference with the rights of private property, nor violative of any constitutional provision, and is a legitimate exercise of legislative power.

5. *Indictment under second section of said act; sufficiency of.*—An indictment under this statute, charging that the defendant "did transport or *remove*," is a substantial compliance with the statute, which uses the words "transport or *move*;" but it must aver that the act was "knowingly" done, or charge the *scienter* in equivalent words.

Vol. lxviii.

[Davis v. The State.]

APPEAL from Dallas Circuit Court.

Tried before Hon. GEO. H. CRAIG.

William Davis, the appellant, was indicted at the Fall Term, 1879, of the Circuit Court of Dallas county, under the second section of the act of February 1, 1879, to prevent, in certain cases, the sale, exchange and transportation of cotton, in the counties of Montgomery, Dallas, &c. The indictment charged that the defendant "did, after sundown, and before sunrise of the succeeding day, transport or remove in Dallas county, cotton in the seed." The defendant demurred to the indictment because it did not aver that the defendant "knowingly" *removed* the cotton. This demurrer was overruled, and the defendant excepted. The defendant was convicted, and he then moved in arrest of judgment, because : 1. The indictment failed to aver that he did the act charged "knowingly." 2. That the act under which defendant was indicted was unconstitutional, being partial in its operation and depriving defendant of his liberty and property, without due process of law, and being violative of Art. V, of the amendments to the Constitution of the United States, and of Art. I, § 7, of the Constitution of Alabama. 3. That the act under which the grand and petit jurors were selected in this case was violative of the same constitutional provisions. This motion was denied, and defendants excepted.

The record does not show any assignment of errors.

J. S. DIGGS, for appellant.—1. The act of December 19, 1876, providing for the appointment of jury commissioners, for the counties therein named, is violative of the 5th amendment to the Constitution of the United States, and of section 7, article 1, of the State Constitution : 1st. Because it subjects a person to deprivation of life, liberty and property without due process of law, in this, that the selection of jurors is taken away from the local officers, duly elected by the people of the county.

2d. Because such legislation, being local in its nature, the people of Dallas county can have no sympathy or assistance from the other counties of the State in procuring its repeal.

3d. Because such legislation tends to originate and encourage, in the county to which such legislation applies, immunity to some of its citizens and proscription to others, by combining together the commissioners and their friends.

The appellant was charged in the indictment with simply removing the cotton. The statute creating the offense prescribes that any one "who knowingly violates any of the provisions" of the act, shall be guilty.

[Davis v. The State.]

H. C. TOMPKINS, Attorney-General, for the State.—Section two of the act of February 1, 1879, makes it unlawful for any person to transport or move after sunset, and before sunrise of the succeeding day, any cotton in the seed, in certain counties of the State, specified in the act. The word "knowingly" does not appear in the section. The indictment follows the language of the act, except that it uses the word "*remove*" instead of the word "*move*" used in the statute. The word "remove," here used, is the equivalent of the statutory word "*move*," and the indictment is sufficient.—*Holly v. State*, 54 Ala. 240 ; 1 Brick. Dig. 499, § 734.

The act regulating the manner of drawing juries in Dallas county is not subject to any constitutional objection. It is within the power of the Legislature to provide a law for the government of a special locality, different from the general law.—*Board of Revenue v. Barber*, 53 Ala. 593 ; *Williams v. State*, 61 Ala. 33.

The statute under which the indictment was found is not violative of any constitutional provision, and the rule well settled in this State, and upheld by the best writers upon constitutional law, is, that a court will not declare void an act of the Legislature unless it clearly contravenes some constitutional prohibition.—Cooley on Cons. Lim., 4th Ed., p. 204 ; *Dorman v. The State*, 34 Ala. 216.

SOMERVILLE, J.—The indictment in this case, which was found at the fall term of the Circuit Court of Dallas county, charges that William Davis, the appellant, "did, after sun-down and before sunrise of the succeeding day, transport or *remove*, in Dallas county, *cotton in the seed*, against the peace and dignity of the State of Alabama."

The questions raised involve the sufficiency of the indictment, and the constitutionality both of the law under which it was found, and under which the grand jury finding it was organized. The points are presented by demurrer and motion made in arrest of judgment, both of which were overruled by the Circuit Court.

The grand jury, by which the indictment was found, and the petit jury by which the appellant was tried, were drawn and organized under the provisions of an act, approved December 19, 1876.—Session Acts 1876-7, pp. 190-193. This act, which is specially applicable only to the county of Dallas, and five other counties in the State, provides for the appointment of five commissioners by the Governor, in each of the counties designated, who are authorized to discharge and perform, in their respective counties, all the duties in relation to the [s]election and drawing of grand and petit

jurors, now required by law to be performed by the judges of probate, sheriffs and clerks of the Circuit or City Courts of said counties." The duties, term of office and compensation of these commissioners are prescribed, as also the qualification of the jurors to be selected. It is entitled "An act to secure more effectually competent and well qualified jurors in the counties of Montgomery, Lowndes, Autauga, Dallas, Perry and Bullock."

We can see no valid objection to this act on constitutional grounds. There is no prohibition to be found in the Constitution, express or implied, as held by this court, in *Williams v. State*, 61 Ala. 33, which limits or restrains the power of the Legislature to regulate the entire subject of the selection and organization of juries, or to make a special law, applicable to particular counties or designated localities, varying in its provisions from the general law of the sovereign jurisdiction. And this conclusion may be said to be based on a principle recognized by the best writers on constitutional law.—Cooley on Const. Lim. 170.

The present indictment is found under section 2 of an act of the Legislature, entitled "an act to prevent, in certain cases, the sale, exchange and transportation of cotton in the counties of Montgomery, Bullock, Dallas, &c."—Acts 1878-79, p. 206.

The first section of this act makes it unlawful, with certain reservations, for "any person to sell or offer for sale, barter, exchange or buy," within the specified localities, "any *cotton in the seed*," or to sell or offer for sale, &c., any cotton in the seed produced in said localities.

Section 2 provides, "that it shall not be lawful for any person to *transport* or *move*, after sunset and before sunrise of the succeeding day," in said localties, "any cotton in the seed." A proviso permits the owner or producer of the cotton to remove it from the field, where it is grown, to the ginhouse or other place of storage of such owner or producer. Section 5 makes it a felony where any one "*knowingly* violates" any of the provisions of the act, and affixes punishment by confinement in the penitentiary.

It is insisted that this act is in violation of the Constitution and therefore void, as an improper exercise of legislative power; that it unjustly and injuriously discriminates against the particular counties included in the law, and subjects persons resident there to deprivation of liberty and property, without due process of law, within the meaning of § 7 of Art. 1 of the State Constitution (1875), and of § 1, Art. 14 of the amendments to the Constitution of the United States.

We confine our discussion of this objection to section 2 of the act in question, the one under which the indictment is . found.

In our inquiries into the nature and limits of legislative power, as affecting this subject, we are not disposed to controvert or materially qualify the principle so emphatically enunciated by this court, in *Dorman v. State*, 34 Ala. 216, (236); that there are no limits to the legislative power of the State government, save such as are written upon the pages of the State or Federal Constitution." "It has never been questioned, so far as I know," says Redfield, C. J., in *Thorpe v. R. R. Co.*, 27 Vt. 142, "that the American Legislatures have the same unlimited power in regard to legislation, which resides in the British Parliament, except where they are restrained by written constitutions. That must be conceded, I think," he says, "to be a fundamental principle in the organization of the American States."—Cooley on Const. Lim. 88-89. And this power and jurisdiction of Parliament, as expressed in the familiar language of Sir Edward Coke, "is so transcendent that it cannot be confined, either for causes or persons, within any bounds."—2 Coke Ins. 36.

This great constitutional axiom is, of course, to be taken as qualified by the necessary implication that the act, which is subjected to scrutiny, is purely *legislative* in its nature and not judicial nor executive.

"This court," as said by Chase, C. J., in the License Tax Cases, 5 Wall. 469, "can know nothing of public policy except from the Constitution and the laws, and the cause of administration and decision. It has no legislative powers. It cannot amend or modify any legislative acts. It cannot examine questions as expedient or inexpedient, as politic or impolitic. Considerations of that sort must be addressed to the Legislature. Questions of policy there are concluded here."

"If," as said by Mr. Justice Walker, in *Dorman v. State*, *supra*, "while keeping within the limits which the sovereign power has prescribed for its action, it [the Legislature] yet violates the abstract principles of justice, and disregards the boundaries of natural right, there is no remedy save in the punitive power of public opinion, and the right of the people to change the representatives of their legislative sovereignty, and through them to repeal the obnoxious enactment."—34 Ala. 235.

It is argued that this statute, under consideration, is such a despotic interference with the right of private property as to be tantamount, in its practical effect, to a deprivation of ownership "without due process of law." The definitions of

this phrase, "due process of law," are so various, in the reported American decisions, that it would be unsatisfactory to attempt an accurate definition of it here. *Omnis definitio in jure periculosa est*, is a wise maxim of judicial caution, a want of proper regard for which has aggravated that proverbial uncertainty of the law, so frequently charged to be its chief reproach. It is sufficient to say that this constitutional barrier was "intended to protect property from confiscation by legislative enactments, and from seizure, forfeiture and destruction, without a trial and conviction by the ordinary modes of judicial proceeding."—*Wynchamer v. People*, 3 Kernan, 366-7, (20 Barb. 567); *Zeigler v. S. & N. R. R. Co.* 58 Ala. 594. It is not, nor can it be maintained, that the act in question goes, or attempts to go this far. It has never been seriously questioned that the *jus disponendi* is not an absolute, unqualified or indispensable right attaching to property, but is subject to such regulations, not inconsistent with the Constitution, as, in the judgment of the law-making powers, the interests of society and good government may require. *Wynchamer v. People*, 20 Barb. 567, (604); *Dorman v. State, supra*. The prohibition in section 2 against *transporting* or *moving* is confined to "cotton *in the seed*," and to such hours as intervene between sunset of one day and sunrise of the succeeding day. It does not inhibit all transportation, but seeks only to regulate and control it, in one particular condition of a commodity. We regard this as a mere police regulation, the alleged impolicy or injustice of which is beyond the legitimate scope of judicial criticism. The primary object of this law is not to interfere with the right of property or its vendible character. Its object is to regulate traffic in the staple agricultural product of the State, so as to prevent a prevalent evil, which, in the opinion of the law-making power, may have done much to demoralize agricultural labor and destroy the legitimate profits of agricultural pursuits to the public detriment, at least within the specified territory. This the Legislature had the power to do.—Tiffany's Gov. & Const. Law, § 318; *Beer Co. v. Massachusetts*, 97 U. S. (7 Otto) 25; *Bartemeyer v. Iowa*, 18 Wall. 129. There is no constitutional objection to it.—*Munn v. Illinois*, 94 U. S. (4 Otto), 113. In discussing the subject of a prohibitory liquor law, confined to a specified locality, which was urged as being violative of this same clause in the Constitution, WALKER, J., in *Dorman v. State, supra*, used the following language, to which it is not necessary, for the purposes of this case, that we should give our unqualified assent: "The prohibition," says he, "must be of such a character as, in effect, to annihilate, within the entire domain covered by the legis-

[Davis v. The State.]

lative authority, the quality of sale which makes the property valuable to the owner, and thus to sweep it, as an article of traffic, from the commerce of the State. If any substantial right of sale within the State is left untouched by the law, this, it is admitted, will save its validity."—34 Ala. 242.

It is further argued, in substance, though not in so many words, that this act operates as a denial by the State to certain persons of that "equal protection of the laws" which is secured to every citizen by section 1, article 14 of the Amendments to the Constitution of the United States.

There is nothing, in our opinion, in either the Federal Constitution or that of the State, which prevents the Legislature from enacting local laws, different in their provisions from the general code of laws for the State, and operating only in certain counties or limited territorial districts. This principle is sustained by the best approved writers on constitutional law, and was settled by this court more than twenty years ago in *Dorman v. State, supra,* and again more recently in *Board of Revenue v. Barber,* 53 Ala. 589; Cooley on Const. Lim. 170.

It was also discussed and fully established by the Supreme Court of the United States in the very recent case of *Missouri v. Lewis,* 101, U. S. Rep. (11 Otto) 22. It is there held that "a State may establish one system of law in one portion of its territory and another system in another," within the limitations of the Constitution, provided it does not deny to any person within its jurisdiction "the equal protection of the laws in *the same district.*" And it is asserted that each State has full power to "make, for municipal purposes, political divisions of its territory, and *regulate their local government.*"

Mr. Justice Bradley, in delivering the opinion of the court, says: Convenience, if not necessity, often require this to be done, and it would seriously interfere with the power of a State to regulate its internal affairs to deny to it this right. We think it is not denied or taken away by anything in the Constitution of the United States, including the amendments thereto." And again: "If every person residing or being in either portion of the State should be accorded the equal protection of the *laws prevailing there,* he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons, not classes. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes *in the same place,* or *under like circumstances. Ib.* 31.

Suggestion merely, and not argument, is needed to show that this legislative enactment, severe as it may be in its

[Davis v. The State.]

penalties, affixes equal punishment upon all persons, without exception, who may violate its provisions.

The objection is urged by the appellant that the *indictment* uses the words "transport or *remove*," while the words of the *act* are "transport or *move*." While it is the better practice, as said by BRICKELL, C. J., in *Holly v. State*, 54 Ala. 238, to follow the exact words of the statute, those equivalent in meaning are sufficient. We consider the words "move" and "remove," as here used, to be equivalent in meaning.

We are of opinion,. however, that the indictment is defective in another respect. It fails to charge that the defendant *knowingly* committed the act for which he is criminally indicted. The statute is highly penal in its character, and creates a new crime unknown to the common law. Section 5 makes knowledge of the facts essential to the crime, deeming him alone guilty "who *knowingly* violates any of the provisions" of the act. The general rule of pleading is, that every indictment, information or other criminal proceeding, ought to contain all that is material to constitute the crime, or every necessary ingredient of the offense, stated with precision, or at least certainty, and in the customary forms of law.—3 Greenl. Ev. § 10; *Beasly v. State*, 18 Ala. 535. A crime is committed only by a combination of *act* and *intent*. "No amount of intent alone is sufficient, neither is any amount of act alone; the two must combine."—1 Bish. Cr. Law, § 430 (6th ed). In the particular crime here charged, there are forcible reasons for the application of this rule requiring the indictment to state the guilty *scienter*. The transportation of the prohibited commodity may have been done ignorantly. The defendant may honestly have believed that he was without the prohibited jurisdiction.

For this defect, the judgment of the Circuit Court must be reversed and the case remanded. In the meanwhile, the defendant will remain in custody until discharged by due course of law.