# *Ex parte* **Macdonald.**

*Application for Prohibition to Circuit Court, in matter of Attachment and Garnishment Proceedings.*

1. *State not included in general statutes.*—As a general rule of statutory construction, without any express legislative declaration, general words in a statute do not apply to the State, nor affect its rights, unless an intention to the contrary appears.

2. *Attachment by State, without bond or affidavit; constitutionality of law authorizing.*—The statute authorizing suits to be brought in the name of the State, on the written direction of the governor to the attorney, " without giving bond or security, or causing affidavit to be made, though the same may be required in actions between private citizens" (Code, § 2902), is not dispensing with " due process of law," nor violative of any constitutional provision, State or Federal.

This is an application by petition, by Gordon Macdonald, for a writ of prohibition, or other appropriate writ, directed to the Circuit Court of Montgomery county, requiring that court to discharge and dismiss the petitioner, without answer, as garnishee in a certain suit therein pending, wherein the State of Alabama was plaintiff, and one Fred. Wolffe was defendant; which suit was commenced by attachment, sued out in the name of the State, by the Attorney-General, on the written instructions of the Governor, without any bond or security being given, or statutory affidavit made, as required in ordinary attachment cases. The garnishee appeared in the Circuit Court, and moved to be dismissed without answer, on the ground that the attachment proceedings were void; and his motion being overruled and refused, he applies to this court for relief.

J. S. WINTER, for the petitioner.

II. C. TOMPKINS, *contra*.

SOMERVILLE, J.—The application is by a garnishee, for a writ of prohibition, to prevent the continued prosecution of certain attachment proceedings in the Circuit Court of Montgomery county, instituted by the State of Alabama, against petitioner, as the debtor of one Wolffe. The attachment had been sued out by the State in its own name, without giving bond or security, or causing any affidavit to be made, under the provisions of section 2902 of the present Code, which reads as follows :

" § 2902. The State of Alabama may sue in its name, and is entitled to all the remedies provided for the enforcement of rights between individuals, *without giving bond or security, or causing affidavit to be made*, though the same may be required if the action were between private citizens ; and the direction in writing of the executive of the State to the attorney bringing the suit, is sufficient authority for bringing the suit."—Code, 1876, § 2902.

It is contended that this section of the Code is unconstitutional, and that the judicial proceedings taken under it are therefore void. The argument is, that the legislature, in undertaking to except the State from the operation of the general law requiring a proper affidavit to be made, and a bond with security to be given, before the issue of the writ, has violated that clause of the State, and also of the Federal Constitution, which prohibits any person from being deprived of his property "without due process of law." In our opinion, this suggestion is without force, and can not be sustained.

It can scarcely be doubted, that the General Assembly pos-

sesses the constitutional power to authorize all creditors to sue out writs of attachment against their debtors, without requiring any affidavit of cause, or any bond with security. The fact that such legislation would be wanting in justice, or in wisdom, and otherwise fraught with manifest evils, is no argument against the existence of the power to perpetrate it. The absence from the constitution of any prohibition of it, is conclusive as to the existence of the right.—*Davis v. The State*, 68 Ala. 58. The objection, then, reduces itself to the proposition, that the State must enter its own courts upon terms of perfect equality with its own citizens ; and that the phrase " due process of law" carries with it the essential idea, that the legislature can enact no law, under which benefits can be be claimed for the sovereign that are denied to the citizen. To state such a proposition is to refute it. The established doctrine is, that, in most cases, the general words of a statute do not include the State, or affect its rights, unless it be so specially declared, or unless it be otherwise made clear that such law was intended to include the State. Sedgwick Stat. & Const. Law, 337 ; *Miller v. The State*, 38 Ala. 600. The State, for example, apart from any constitutional inhibition on the subject, would not be liable to an ordinary suit, except by its own consent, usually expressed by statute.—*Comer v. Bankhead*, 70 Ala. 493 ; *Railroad Co. v. Alabama*, 101 U. S. 832. Nor would the State be liable to any individual, for the negligence or misfeasance of its officers or agents (*Gibbons v. U. S.*, 8 Wall. 269) ; nor chargeable as garnishee of one of its officers, or of any other person to whom it might be indebted.—Drake on Attach. (6th Ed.), § 516 a. So, statutes of limitation, which may be binding on all persons, are held not to bind the State, unless specially named.—*Miller v. The State, supra.* And the property of the State is not liable to taxation, or subject to sale under execution, although included by the general terms of the law.

We might add to these many other cases, where exemption from the operation of general statutes is declared to be a prerogative of the State, as a mere rule of construction, and without a legislative assertion of such special exemption.— *The State v. Allen*, 71 Ala. 543 ; *Josselyn v. Stone*, 28 Miss. 753 ; *State v. Kinne*, 41 N. H. 238. The rule is one of public policy, and in recognition of the attribute or privilege of political sovereignty which attaches to the government. It has never been supposed that a State is compelled, even in dealing with its own citizens, to enact precisely the same laws for every particular class, without regard to locality or occupation. Neither " due process of law," nor the " equal protection of the laws," secured to every citizen, implies such an idea. If otherwise free from objection, all that can be required is, that laws be general in

their application to persons of a particular class or locality to which they apply. Their policy is the subject exclusively of legislative determination.—Cooley's Const. Lim. (5th Ed.) 482–83, [390*]. And even where certain classes of persons are clothed by the constitution with equality before the law, we have held that this would not prohibit the law-making power from the exercise of a reasonable discretion in the shaping of remedies, so as to adapt them to the inherent nature of the subject-matter of legislation, in the infinitude of its constantly progressive and changing variety.—*Home Protection Ins. Co. v. Richards & Sons,* 74 Ala. 466.

In view of these well settled principles, it can not be supposed, as we have before said, that there was any intention on the part of the framers of our constitution, Federal or State, to confine the State to precisely the same kind of remedies as are secured to their citizens, in asserting and defending legal rights as litigants in the courts. No such construction can be placed on the phrase " due process of law," or its synonym in meaning, " the law of the land," as anciently used in *Magna Charta.* *Due process of law,* in a large and general sense, as said by Chancellor Kent, means " law in in its regular course of administration, through courts of justice."—2 Kent's Com. (12th Ed.) 12–13. It was defined by a learned New York judge to mean, " in the due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights."— *Westervelt v. Gregg,* 12 N. Y. 202. Judge Cooley says : " Due process of law, in each particular case, means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs."—Cooley's Const. Lim. (5th Ed.) 436, 357*. It is conceded on all hands, however, that no exact definition of the phrase under consideration can be attempted, which will be applicable to all cases. Nearly a century of discussion and judicial construction in this country have suggested the wisdom of uniformly pretermitting such an effort.—*Rowan v. State* (30 Wis. 129), 11 Amer. Rep. 559 ; *Zeigler v. S. & N. Ala. Railroad Co.,* 58 Ala. 594 ; *Davis v. The State,* 68 Ala. 58 ; *Ex parte Wall,* 107 U. S. 265 ; 1 Bouv. Law Dic. (15th Ed.) p. 571. In *Davidson v. New Orleans* (96 U. S. 97, 105), it is observed by Mr. Justice Miller, speaking for the court : " It is not possible to hold that a party has, without due process of law, been deprived of his property, when, as regards the issues affecting it, he has, by the law of the State, a fair trial in a court of justice, according to the modes of proceeding *applicable to*

*such a case."—McMillan v. Anderson*, 95 U. S. 37 ; *Ex parte Wall*, 107 U. S. 289–291.

Tested by these approved definitions, and especially by the rule last declared, it is very clear to our minds, that the statute in question, exempting the State from making affidavit and giving a bond with approved security, such as is provided for by the general law for other litigants, is entirely free from constitutional objections, on the ground suggested. In *McMillan v. Anderson*, (95 U. S. 37), it was argued, that a statute which required a party to give bond, as a condition precedent to enjoining the collection of certain taxes assessed against him, was not due process of law. To this suggestion the court said : " It can hardly be necessary to answer an argument which excludes from the definition of ' due process of law' all that numerous class of remedies which, by the rules of the court, or by legislative provisions, a party invoking the powers of a court of justice is required to give that security which is necessary to prevent its process from being used to work gross injustice to another." We may add, that the power to impose such a condition carries with it the power to revoke it, or limit it to a prescribed class of cases. This does not differ from the power to exempt a certain class of cases from a general law on the subject. This class is here made to embrace all in which the citizen is contending with the sovereignty in her own courts, as a defendant in attachment proceedings. Such legislation is entirely compatible with the uniform theory of our laws, that the State will never refuse to indemnify her citizens for a legal wrong.

The application must be denied.

CLOPTON, J., not sitting.