CLARK, Retired Circuit Judge.
Appellant was convicted of murder in the first degree of Douglas Allen Easley. He was represented on the trial by employed *354 attorneys, Messrs. Marcus A. Jones and Stephen R. Arnold, attorneys at law in Birmingham. The verdict was returned and the judgment rendered on October 4, 1979. On October 10, 1979, his attorney, Mr. Arnold, filed and presented a motion for a new trial. Thereafter, appellant made a change in his attorneys by employing the attorney who now represents him as appointed attorney by reason of indigency of appellant, who filed on November 1, 1979, an amendment to the previously filed motion for a new trial. On January 11, 1980, his new attorney filed a second amendment to the motion for a new trial, on which day a lengthy hearing was conducted, at which several witnesses, including the defendant and his previous attorneys, testified on call of the defendant. A major contention of defendant in the second amendment to the motion for a new trial, and in the argument of his counsel in support of the motion, was that his previous counsel were disqualified to act as his counsel at the time of their representation of him, by reason of alleged conflict of interest by reason of previous representation by said attorneys of defendant’s son, who was one of the eyewitnesses for the State on the trial of the instant case. In presenting this argument to the trial court, defendant’s counsel relied upon Zuck v. Alabama, 588 F.2d 436 (5 Cir. 1979). At the conclusion of the argument, the trial court read and rendered an order overruling the motion for new trial, which order as written and signed by the trial judge is as follows:
“In support of Mr. Bryan’s motion for new trial he argues that there was a conflict of interest in this case and cites Zuck v. State of Alabama, 588 F.2d 436. The 5th Circuit Court of Appeals found that everyone except the defendant himself knew of his attorney’s representation of the prosecutor in a pending civil suit. “In this case, the defendant knew his attorney had represented his son. He, the defendant, had hired the firm of Jones, Roden & Arnold to represent his son.
“In the Zuck case, said representation by defendant’s attorney of the State’s attorney in a civil case was current.
“Here, said representation by defendant’s attorneys of defendant’s son’s misdemeanor conviction was completed and the time for an appeal had lapsed.
“In the Zuck case, the Appeals Court found defendant’s attorney had an encumbrance which might have dampened his ardor in representing the defendant in order to placate his other client.
“Here, defendant’s attorneys had no such encumbrance. Their representation of defendant’s son was completed. “Although the trial tactics which Mr. Bryan might have used, had he represented the defendant, may well have been different from those used by Messrs. Jones and Arnold, such divergence is to be expected among attorneys for each has his own tactics, techniques, style, personality, methods of defense, etc.
“But Mr. Scoggins, the defendant herein, was given an able and forceful representation by both Mr. Jones and Mr. Arnold. Marcus Jones and Steve Arnold are two experienced and highly effective practitioners at this Bar and their integrity is above reproach.
“Having presided at the trial, having seen the vigorous defense the defendant received by Mr. Jones and Mr. Arnold, and having heard Mr. Bryan’s motion, I find there was no division of interest, no erosion of zeal, and therefore, no conflict of interest in the representation which Mr. Jones and Mr. Arnold gave to Mr. Scog-gins because they had represented his son. The motion is denied.”
In appellant’s brief, he captions his argument for a reversal as follows:
“The failure of defense counsel to adequately explore all avenues of defenses denies a defendant of affective [sic] assistance of counsel.”
Appellant says nothing in his brief that is related to his main argument and main contention on the hearing on the motion for a new trial as amended. He quotes copiously from the testimony on the trial in support of his contention that the evidence was *355 weak as to the defendant’s “defense of self-defense” and says:
“The Appellant, however, did have a viable defense to first degree murder, that being the defense of not guilty by reason of insanity or in the alternative intoxication to the point of lessening his criminal responsibility. However, defense counsel made absolutely no attempt to ever adequately develop this defense.”
During the testimony on the hearing of the motion for a new trial, Mr. Arnold, one of defendant’s attorneys on the trial, was questioned intensively by defendant’s counsel on the motion for new trial as to what the witness knew about any or all emotional or mental problems of defendant. It appears that Mr. Arnold' had represented him previously in a divorce proceeding. His testimony, on direct examination by defendant’s then counsel, was in part as follows:
“Q. Mr. Arnold, during the course of your participation in this case did you learn that the Defendant had a problem with drinking alcohol?
“A. I have known that ever since I have known Charlie.
“Q. All right. So, it would be through the domestic situation, etc., back even in ’78 that you were aware of that?
“A. Yes.
“Q. How serious or how excessive was it, to your knowledge?
“A. That’s a relative thing. To me it was very excessive.
“Q. Was there during the course of your participation in the case an investigation, did you at any time, you or anyone else participating in the defense of the case at any time have any examinations performed upon Mr. Scoggins to determine whether or not he had any emotional and/or mental problems.
“A. I sought no professionals — let me say this: In preparing for the homicide case we sought no professional outside assistance.
“Back in the domestic case I recommended that Charlie see a counsellor or psychologist or someone who could help him with some problems with alcohol with the divorce, the post-divorce. As you know, that can be a very damaging thing. And Charlie wouldn’t do it.
“Q. What problems did he have, just generally, that you observed and in your opinion did he have at that time which resulted in your making that recommendation?
“A. Charlie was very depressed. He didn’t want a divorce.
“Q. And was his drinking also, excessive drinking, another reason for you making that recommendation?
“A. To some extent, yes.
“Q. Did you ever conduct any investigation prior to the trial of this case to ascertain whether or not in fact Mr. Scoggins had been — had become an alcoholic?
“A. Not in those direct terms, no.
“Q. Did you or anyone to your knowledge participating in the defense of this case at any time prior to trial conduct an investigation to ascertain what effect the occasions when Mr. Scoggins was drunk, intoxicated, what effect that had upon his ability to distinguish right from wrong?
“A. I’m not sure I understand.
“Q. Did you or anyone else that you were associated with at any time conduct an investigation to see whether or not the Defendant’s alcohol problem effected [sic] his ability to distinguish right from wrong, in other words, whether or not it would possibly bring into consideration by the Defense an insanity plea, referring, obviously, only to the occasions when he was drunk, not the occasions when he obviously was sober?
“A. Well, you are going into strategy matters, too, Mr. Bryan.
“Q. Yes, sir.
“A. A plea of self-defense and a plea of insanity, as a matter of fact, any plea of not guilty and a plea of insanity are by their very nature contradictory.
“Q. In your opinion.
“A. Well, if a Defendant comes forth and says not guilty by reason of insanity, *356 generally the gist of that is I am not legally responsible for my crimes because I • didn’t know right from wrong. And generally you have to admit committing the crime to succeed in an insanity plea. “It’s very difficult to convince a jury that I’m insane and I didn’t do it.
“Q. Uh huh.
“A. You are well aware of that paradox.
“Q. And what was the plea in this case?
“A. The plea was not guilty.
“Q. But in the trial the Defense admitted Mr. Scoggins did fire the fatal shot but that he did it under extenuating circumstances, to-wit, self-defense; is that correct?
“A. Correct.”
On the hearing of the motion for a new trial as amended, defendant presented evidence by lay witnesses to the effect that he had had some emotional and mental problems arising out of his previous domestic situation, and out of his drinking habits, that could conceivably have been sufficient to present a jury issue as to his insanity at the time he shot and killed Allen Easley. There was no testimony of an expert to that effect. Furthermore, the undisputed evidence shows that he was at the time of the alleged crime a regularly employed, capable locomotive engineer, a position requiring a high order of intelligence and stability of mind and body. A review of the entire evidence oh the trial and on the motion for a new trial leaves the reviewer unconvinced that his attorneys on the trial should have advised or encouraged him to plead not guilty by reason of insanity, or attempted to diminish his attitude and apparently firm and sincere conviction that he was acting in self-defense by leaning upon the role of Vodka and beer in the tragedy that occurred. We do not question the sincerity of plaintiff’s counsel in the position taken at this time, but we are not convinced that if appellant were granted a new trial, his attorneys then, whether his present one or not, would advise a plea of not guilty by reason of insanity, or endeavor to steer the case toward a conviction of manslaughter, rather than murder, by the route of intoxication.
In some material respects, the evidence was in conflict on the trial as between the testimony of defendant on the one hand and the testimony of defendant’s son and his three young friends on the other, but in other material respects the evidence was without conflict. It was undisputed that all of them had been drinking at defendant’s home, that defendant had been drinking Vodka and beer, that the boys had been drinking beer; that defendant went to the upper story or half story of the dwelling and while standing near the top of the stairs he fired a pistol down the stairway where his son and one or more of the other boys were at the time; that thereafter Eas-ley, a robust young man, went up the stairway and at about the top thereof was shot by defendant with the same pistol and fell back down the stairway. The defendant made a statement to a police officer soon thereafter, which was in part as follows:
“After the grass was cut Charles, the third, Rogers, Easley, and myself sat around the kitchen table and drank beer. While we were drinking the beer Charles, the third, began cursing me. After a while I left the kitchen and went upstairs to my bedroom and Charles continued to curse me. So, I -walked to the top of the stairs and fired my pistol down the stairs toward the living room. I had put my pistol into my pocket while they were cutting the’ grass. After firing the shot down the stairs toward the living room I went back into my bedroom and called the police. After calling the police I left the bedroom and entered the hall. At this time the gun was in my pocket. Eas-ley began coming up the steps. I pulled the gun and pointed it at Easley and told him to go back downstairs and leave me alone. Easley continued to advance on me with his fist doubled up. I backed up a couple of steps, closed my eyes and fired the gun at Easley. After I fired the gun Easley hit me in the forehead and grabbed me around the neck with both hands. I pushed on Easley and he let go of me. At this time I opened my eyes *357 and Easley began backing down the steps. And I saw blood on my left hand. And Easley began to fall backwards.”
In their testimony, defendant s son and his young friends denied cursing the defendant.
There was evidence on the motion for a new trial that defendant was a person of a good general reputation and a good reputation for truth and veracity. The record does not enable us to say whether it would have been beneficial on the trial for such evidence to have been presented, for the reason that the record does not enable us to say whether such evidence would have been offset by countervailing evidence. Furthermore, this particular point is not presented by appellant.
The record falls far short of sustaining appellant’s contention that the trial court was in error in overruling defendant’s motion for a new trial as last amended.
We have searched the record for any error prejudicial to the defendant in connection with the trial of the case and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.