We granted the petition for writ of certiorari in this case primarily to review this question: Was the indictment, which tracked the language of the statute in alleging that Henry Mack Harper "unlawfully" distributed cocaine in violation of Ala. Code 1975, § 13A-12-211, fatally defective because it did not allege that the offense was "knowingly" committed? This question was raised for the first time by the petition filed in this Court. We also review a secondary question, whether the Court of Criminal Appeals correctly determined that Harper's ineffective assistance of counsel claim was procedurally barred.
 FACTS
Henry Mack Harper was indicted and convicted of unlawfully distributing cocaine, in violation of Ala. Code 1975, §13A-12-211, and was sentenced to a term of 15 years in the penitentiary. He was also ordered to pay a $1,000 fine and to pay $100 to the Crime Victims' Compensation Fund. The Court of Criminal Appeals affirmed his conviction with an unpublished memorandum opinion, Harper v. State, 579 So.2d 710
(Ala.Crim.App. 1991).
 I
We first address Harper's contention that the indictment was void because it did not contain an allegation that he had "knowingly" distributed cocaine. The indictment charged that Harper did "unlawfully sell, furnish, give away, manufacture, deliver, or distribute a controlled substance, to-wit: cocaine, in violation of [§] 13A-12-211 of the Code of Alabama."[1]
(Emphasis added).
Section § 13A-12-211 reads, in part, as follows:
 "(a) A person commits the crime of unlawful distribution of controlled substances if, except as otherwise authorized, he sells, furnishes, gives away, manufactures, delivers, or distributes a controlled substance enumerated in schedules I through V.
 "(b) Unlawful distribution of controlled substances is a Class B felony."
The indictment was returned on February 17, 1989. That date is important, because, at that time, the procedure for preferring an indictment was governed by the provisions of Temporary Rule 15.2 (now Rule 13.2, Alabama Rules of Criminal Procedure), which provided, in part, that "[t]he indictment or information shall be a plain, concise statement of the facts in ordinary language sufficiently definite to inform a defendant of common understanding of the offense charged and with that degree of certainty which will enable the court, upon conviction, to pronounce the proper judgment." Temporary Rule 15.2(a). This Rule also required that the indictment state "the official or customary citation of the statute, rule, regulation, or other provision of law which the defendant is alleged to have violated." Temporary Rule 15.2(b). This indictment complied with that requirement.
In determining whether a particular charge comports with the requirements of the Rule, we set forth the general principles that we believe should govern our review of the question posed by the petitioner concerning the sufficiency of the charge in his case. According to the Comment to Temporary Rule 15.2 (now Rule 13.2), "[the] rule is designed to simplify the pleading in criminal matters, much the same as the pleading in civil actions has been simplified." We apply the principle *Page 1183 
succinctly stated in that commentary in reaching our decision in this case.
The general rule in Alabama, even before the adoption of Temporary Rule 15 (now Rule 13), was that it was sufficient to charge the elements of the statutory offense in the words of the statute, provided the statute prescribed with definiteness the constituent elements of the offense. Ex parte Allred,393 So.2d 1030 (Ala. 1980); see, also, cases collected at 12 Ala.Dig., Indictment and Information, Key No. 110(3). The crucial question, of course, is whether the indictment sufficiently apprises the accused with reasonable certainty of the nature of the accusation made against him so that he may prepare his defense, that he may be protected against a subsequent prosecution for the same offense. See Hochman v.State, 265 Ala. 1, 91 So.2d 500 (1956), in which the Court distinguished Gayden v. State, 262 Ala. 468, 80 So.2d 501
(1955), a leading case on the sufficiency of an indictment, in which a divided Court held that two counts of an indictment against Gayden were defective and subject to a demurrer.[2]
The question raised in the petition, and frequently debated, is whether scienter must be alleged in an indictment charging a person with a statutory crime, such as the one charged here, especially in view of the seriousness of the offense. InGayden, supra, Mr. Justice Simpson, writing for a sharply divided Court, commented on the requirement of scienter
regarding the crimes there alleged (that the defendant had obtained narcotics by fraud, deceit, misrepresentation, or subterfuge, or by forgery or alteration of a prescription, or by concealment of a material fact, or by use of a false name, etc.). He criticized the notion that because the crimes charged were so-called "public welfare crimes" the indictment could track the words of the statute, calling that notion "a rather unusual innovation in criminal pleading," and asserting, "We have found no case nor have we been directed to one which asserts the proposition that the defendant is entitled to less (or no) constitutional protection when he is charged with a crime against the public." 262 Ala. at 471, 80 So.2d at 504.
There are at least two reasons why Gayden is inapplicable. First, this Court has liberalized criminal pleading and has provided a method for defendants to obtain a more definite statement of the charges. Temporary Rule 15.2 (now Rule 13.2).
Second, the statement in Gayden that the Court's attention had not been directed to a case in which the scienter
requirement in a public welfare crime had been discussed indicates that neither the State nor the defendant in Gayden
had called to the Court's attention two cases from the Supreme Court of the United States that had discussed, in some detail, that very question. In United States v. Balint, 258 U.S. 250,42 S.Ct. 301, 66 L.Ed. 604 (1922), the defendants demurred to an indictment charging them with a violation of the Narcotic Act on the ground that the indictment made no mention of the intention with which the defendants had acted. The indictment there, like the indictment in this case, tracked the language of the statute. The lower court had sustained the demurrer and quashed the indictment. The Court held:
 "While the general rule at common law was that the scienter was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes even where the statutory definition did not in terms include it (Reg. v. Sleep, 8 Cox C.C. 472), there has been a modification of this view in respect to prosecutions under statutes the purpose of which would be obstructed by such a requirement. It is a question of legislative intent to be construed *Page 1184 
by the court. It has been objected that punishment of a person for an act in violation of law when ignorant of the facts making it so, is an absence of due process of law. But that objection is considered and overruled in Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 69, 70, 30 S.Ct. 663, 666-67, 54 L.Ed. 930, in which it was held that in the prohibition or punishment of particular acts, the State may in the maintenance of a public policy provide 'that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.' Many instances of this are to be found in regulatory measures in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of mala in se. Commonwealth v. Mixer, 207 Mass. 141
[93 N.E. 249]; Commonwealth v. Smith, 166 Mass. 370
[44 N.E. 503]; Commonwealth v. Hallett, 103 Mass. 452; People v. Kibler, 106 N.Y. 321 [12 N.E. 795]; State v. Kinkead, 57 Conn. 173 [17 A. 855]; McCutcheon v. People, 69 Ill. 601; State v. Thompson, 74 Ia. 119
[37 N.W. 104]; United States v. Leathers
[26 F.Cas. 897], 6 Sawy. 17; United States v. Thomson, 12 Fed. 245; United States v. Mayfield, 177 Fed. 765; United States v. 36 Bottles of Gin, 210 Fed. 271; Feeley v. United States, 236 Fed. 903, Voves v. United States, 249 Fed. 191. So, too, in the collection of taxes, the importance to the public of their collection leads the legislature to impose on the taxpayer the burden of finding out the facts upon which his liability to pay depends and meeting it at the peril of punishment. Regina v. Woodrow, 15 M. W. 404; Bruhn v. Rex, [1909] A.C. 317. Again where one deals with others and his mere negligence may be dangerous to them, as in selling diseased food or poison, the policy of the law may, in order to stimulate proper care, require the punishment of the negligent person though he be ignorant of the noxious character of what he sells. Hobbs v. Winchester Corporation, [1910] 2 K.B. 471, 483.
 "The question before us, therefore, is one of the construction of the statute and of inference of the intent of Congress. The Narcotic Act has been held by this court to be a taxing act with the incidental purpose of minimizing the spread of addiction to the use of poisonous and demoralizing drugs. United States v. Doremus, 249 U.S. 86, 94, 39 S.Ct. 214, 216, 63 L.Ed. 493; United States v. Jin Fuey Moy, 241 U.S. 394, 402, 36 S.Ct. 658, 659, 60 L.Ed. 1061.
 "Section 2 of the Narcotic Act, 38 Stat. 786, we give in part in the margin. It is very evident from a reading of it that the emphasis of the section is in securing a close supervision of the business of dealing in these dangerous drugs by the taxing officers of the Government and that it merely uses a criminal penalty to secure recorded evidence of the disposition of such drugs as a means of taxing and restraining the traffic. Its manifest purpose is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him.
Congress weighed the possible injustice of subjecting an innocent seller to a penalty against the evil of exposing innocent purchasers to danger from the drug, and concluded that the latter was the result preferably to be avoided. Doubtless considerations as to the opportunity of the seller to find out the fact and the difficulty of proof of knowledge contributed to this conclusion. We think the demurrer to the indictment should have been overruled."
258 U.S. at 251-54, 42 S.Ct. at 302-03.
Balint was distinguished in Morissette v. United States,342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), however. InMorissette, the Court held that a criminal intent was an essential element of an offense under 18 U.S.C. § 641, which provided that "whoever embezzles, steals, purloins, or knowingly converts" property of the United States is punishable by fine and imprisonment.[3] *Page 1185 
Morissette was indicted on the charge that he "did unlawfully, willfully and knowingly steal and convert" property of the United States of the value of $84. Morissette defended against the charge on the ground that he thought that the property he had taken had been abandoned. In instructing the jury, the trial judge, in effect, directed the jury to return a verdict against Morissette. The trial judge believed that the statute was a strict liability statute, and that blameworthiness was not required in order to prove guilt.
In distinguishing Balint and United States v. Behrman,258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922), the Morissette
Court said:
 "In those cases this Court did construe mere omission from a criminal enactment of any mention of criminal intent as dispensing with it. If they be deemed precedents for principles of construction generally applicable to federal penal statutes, they authorize this conviction. Indeed, such adoption of the literal reasoning announced in those cases would do this and more — it would sweep out of all federal crimes, except when expressly preserved, the ancient requirement of a culpable state of mind. We think a resume of the historical background is convincing that an effect has been ascribed to them more comprehensive than was contemplated and one inconsistent with our philosophy of criminal law.
 "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory 'But I didn't mean to,' and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a 'vicious will.' Common-law commentators of the Nineteenth Century early pronounced the same principle, although a few exceptions not relevant to our present problem came to be recognized.
 "Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil. As the states codified the common law of crimes, even if their enactments were silent on the subject, their courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the ideas of the offense that it required no statutory affirmation. Courts, with little hesitation or division, found an implication of the requirement as to offenses that were taken over from the common law. The unanimity with which they have adhered to the central thought that wrongdoing must be conscious to be criminal is emphasized by the variety, disparity and confusion of their definitions of the requisite but elusive mental element. However, courts of various jurisdictions, and for the purposes of different offenses, have devised working formulae, if not scientific ones, for the instruction of juries around such terms as 'felonious intent,' 'criminal intent,' malice aforethought,' guilty knowledge,' 'fraudulent intent,' 'willfulness,' 'scienter,' and denote guilty knowledge, or 'mens rea,' to signify an evil purpose or mental culpability. By use or combination of these various tokens, they have sought to protect those who were not *Page 1186 
blameworthy in mind from conviction of infamous common-law crimes.
 "However, the Balint and Behrman offenses belong to a category of another character, with very different antecedents and origins. The crimes there involved depend on no mental element but consist only of forbidden acts or omissions. This, while not expressed by the Court, is made clear from examination of a century-old but accelerating tendency, discernible both here and in England, to call into existence new duties and crimes which disregard any ingredient of intent. The industrial revolution multiplied the number of workmen exposed to injury from increasingly powerful and complex mechanisms, driven by freshly discovered sources of energy, requiring higher precautions by employers. Traffic of velocities, volumes and varieties unheard of came to subject the way-farer to intolerable casualty risks if owners and drivers were not to observe new cares and uniformities of conduct. Congestion of cities and crowding of quarters called for health and welfare regulations undreamed of in simpler times. Wide distribution of goods became an instrument of wide distribution of harm when those who dispersed food, drink, drugs, and even securities, did not comply with reasonable standards of quality, integrity, disclosure and care. Such dangers have engendered increasingly numerous and detailed regulations which heighten the duties of those in control of particular industries, trades, properties or activities that affect public health, safety or welfare.
 "While many of these duties are sanctioned by a more strict civil liability, lawmakers, whether wisely or not, have sought to make such regulations more effective by invoking criminal sanctions to be applied by the familiar technique of criminal prosecutions and convictions. This has confronted the courts with a multitude of prosecutions, based on statutes or administrative regulations, for what have been aptly called 'public welfare offenses.' These cases do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime. This has not, however, been without expressions of misgiving."
342 U.S. at 250-56, 72 S.Ct. at 243-46.
The Court, after detailing much of the history of the common law requirement that a culpable mental state be shown, and after distinguishing between a property crime, like Morissette's, and a drug offense, like that involved inBalint, further stated the following:
 "Neither this Court nor, so far as we are aware, any other has undertaken to delineate a precise line or set forth comprehensive *Page 1187 
criteria for distinguishing between crimes that require a mental element and crimes that do not. We attempt no closed definition, for the law on the subject is neither settled nor static. The conclusion reached in the Balint and Behrman cases has our approval and adherence for the circumstances to which it was there applied. A quite different question here is whether we will expand the doctrine of crimes without intent to include those charged here.
 "Stealing, larceny, and its variants and equivalents, were among the earliest offenses known to the law that existed before legislation; they are invasions of rights of property which stir a sense of insecurity in the whole community and arouse public demand for retribution, the penalty is high and, when a sufficient amount is involved, the infamy is that of a felony, which, says Maitland, is '. . . as bad a word as you can give to man or thing.' State courts of last resort, on whom fall the heaviest burden of interpreting criminal law in this country, have consistently retained the requirement of intent in larceny-type offenses. If any state has deviated, the exception has neither been called to our attention or disclosed by our research."
342 U.S. at 260-61, 72 S.Ct. at 248-49.
Petitioner relies heavily upon this Court's case ofWalker v. State, 356 So.2d 672 (Ala. 1977), in arguing that knowledge is an essential element of the drug offense for which he was convicted. In Walker, this Court, reviewing a decision of the Court of Criminal Appeals,[4] seemed to follow the rule ofMorissette and held that "knowledge is an essential element of the offense of illegal possession of a controlled substance under the Alabama Controlled Substances Act." 356 So.2d at 674.
A first reading of Walker would suggest that it would control here, as the petitioner contends, because the facts are similar in that the statute allegedly violated did not use the word "knowingly," yet a majority of this Court held that "knowledge [was] an essential element of the offense." A closer examination of the Walker case, however, especially of the final result reached in that case, indicates that the defect in the indictment in Walker was not considered a jurisdictionaldefect.
The Court in Walker discussed the requirement that the State prove "knowledge" on the part of a defendant when charged with the unlawful possession of drugs and held that "[i]t is undisputed that the State may enact laws for the public health and safety imposing strict liabilities without any element of scienter," 356 So.2d at 673, but that "[i]n such a case as this, the desirability of efficient enforcement of regulatory statutes must give way to the traditional requirement that criminal sanction be imposed only for blameworthy conduct in order to comply with the requirements of due process of law."356 So.2d at 674. The Court also held that "knowledge is an essential element of the offense of illegal possession of a controlled substance under the Alabama Controlled Substances Act." 356 So.2d at 674.[5]
The statement in Walker that knowledge is an essential element of the offense of illegal possession of a controlled substance under the Alabama Controlled Substances Act would seem to support the petitioner's contention that he can raise the failure of the indictment to allege knowledge at any time, because the indictment would have failed to state a charge upon which a conviction could be based. In fact, in Stewart v.State, 580 So.2d 27 (Ala.Crim.App. 1990), cert. quashed,580 So.2d 27 (Ala. 1991), the *Page 1188 
Court of Criminal Appeals, citing the Walker principle, held that the indictment in that case was void because it did not allege knowledge as an element of the offense and that the issue could be raised by the defendant after his trial.
After the judgment in Walker was reversed and the cause was remanded to the Court of Criminal Appeals, that Court addressed the question whether the evidence showed that the defendant had knowledge of the presence of heroin in a package, but the Court of Criminal Appeals did not address the issue presented here, whether the indictment was so defective that it would not support a conviction. It is quite clear that, on remand in theWalker case, the Court of Criminal Appeals addressed only the element of knowledge as it related to proof of the crime there charged, not the sufficiency of the indictment.[6] The indictment in Walker read substantially like the indictment here, and it did not allege that the offense was knowingly done. In fact, the indictment in Walker used the term "unlawfully," just as does the indictment in this case.[7]
This Court, in Walker, did not consider the failure to plead "knowledge" in the indictment to be a jurisdictional defect, because this Court, on original deliverance, 356 So.2d 672, and on denial of certiorari, after the Court of Criminal Appeals had affirmed the conviction again, Ex parte Walker,356 So.2d 677 (Ala. 1978), did not mention or address the fact that the indictment in that case, like the indictment in this case, failed to allege that the possession was with knowledge.
It would appear, on a first reading, that the Walker
principle is inapplicable in this case, because a close examination of what happened in Walker shows that the statement in the opinion that knowledge was an essential element of the crime was directed to the proof of knowledge at trial, not to the pleading of knowledge.[8]
In any event, the Walker case was decided prior to the effective date of the Alabama Criminal Code,[9] and prior to the effective date of Temporary Rule 15.2 (now Rule 13.2, Ala.R.Crim.P.).[10] The Criminal Code and the Rule, respectively, specify what is required to establish culpability, as a matter of substantive law, and the procedure for charging an offense.
In fact, many of the decisions that discuss the question we have under consideration were decided prior to the adoption of the Alabama Criminal Code and the Alabama Rules of Criminal Procedure. They should be considered in light of that fact. The commentary to § 13A-2-1 of that Code discusses the culpability question and some of the concepts embodied in the Criminal Code and shows the effort made to harmonize prior cases:
 "This section and the following three (§§ 13A-2-2, 13A-2-3 and 13A-2-4) preserve *Page 1189 
for the new Criminal Code certain concepts basic to the entire criminal law and set forth some necessary general definitions. There were no definitional Alabama statutes delineating the circumstances under which culpability was required for criminal liability or the kind of culpability required to be proved, although there were numerous statutes and cases that may define or discuss a particular kind of culpability as applied to a particular offense.
 "Codification of these concepts, mostly found heretofore in judicial opinions and trial courts' instructions to juries, has been attempted in comparatively concise and clear language. It would be impossible — and it is not here intended — to cover every factual situation involving difficult legal concepts that may arise or to preempt further judicial formulations. Also, it is not certain that codified culpability concepts can be adequately translated into intelligible jury instructions or otherwise distilled into layman's language."
The Alabama Criminal Code defines only four culpable mental states, "intentionally," "knowingly," "recklessly," and "criminal negligence." Ala. Code 1975, 1 § 13A-2-2. The Criminal Code does not define "unlawfully," the word used in the statute under consideration and the word used in the indictment in this case, but it seems apparent that those who helped to draft the Alabama Criminal Code were aware of the problems caused when statutes set out a culpable mental state and express it in different words. The commentary to § 13A-2-2 (definition of culpable mental states) says the following regarding the various terms used in cases decided before the adoption of the Criminal Code relating to and defining the culpable mental state required:
 "It would be impossible to review, much less reconcile and make clear and uniform, the myriad of Alabama statutes and cases that have employed or discussed some term of mental culpability. Such mental terms and concepts, while necessarily difficult to articulate, sometimes have been vaguely or only partly defined, or otherwise seem imprecise or inconclusive, unclear or ambiguous, even confusing or contradictory, or overrefined with technical, obscure and often subtle, if not dubious, distinctions. These adverbial terms include, e.g.: 'intentionally,' 'willfully,' 'purposely,' 'designedly,' 'knowingly,' 'deliberately,' 'maliciously,' 'with premeditation,' 'recklessly,' 'negligently,' 'with culpable negligence,' 'with gross negligence,' 'with criminal negligence,' 'without due caution,' 'wickedly,' 'unlawfully,' 'wrongfully' and scores of others."
The adoption of the Criminal Code, however, did not eliminate the debate over the questions of when, how, and under what circumstances a culpable mental state must be alleged.
Cases decided since the adoption of the Alabama Criminal Code and the adoption of Temporary Rule 15 (now Rule 13) that discuss the question whether an indictment is defective for failing to allege that a drug offense was committed "knowingly" are somewhat confusing, and some are, frankly, inconsistent.
In Morrison v. State, 455 So.2d 240, 243 (Ala.Crim.App. 1984), for example, the indictment alleged that the trafficking was done "unlawfully," while the statute used the term "knowingly." The defendant demurred to the indictment, and the demurrer was overruled. The Court of Criminal Appeals said the following:
 "An indictment must, of course, inform the defendant of the charge he must defend against; if it fails to do this, then it is defective. When the indictment charges 'unlawful' possession, then by inference it means 'knowing' possession. Either actual possession or constructive possession is sufficient to constitute the crime. It should not be necessary in the indictment to detail whether the possession expected to be proved is actual or constructive or both. The defendant was not injured by the wording of this indictment and was properly informed of the charges against him."
455 So.2d at 243.
This Court refused to review Morrison's conviction, even though in his certiorari *Page 1190 
petition to this Court he squarely presented the issue concerning the failure to use the word "knowingly," in the following terms:
 "Pursuant to Rule 39(c)(4), A.R.A.P., Morrison asserts there is a direct conflict between the instant opinion [i.e., the opinion of the Court of Criminal Appeals in Morrison's case] wherein the Court below held that 'when the indictment charges "unlawful" possession, then by inference it means "knowing" possession,' [opinion, 455 So.2d at 243], and Davis v. State, 68 Ala. 58 (1880), wherein this Honorable Court held that section 5 of the criminal statute under review made knowledge of the facts essential to the crime, which [knowledge] had to be averred in the indictment because of the phraseology 'who knowingly violates any of the provisions of the act,' . . . [68 Ala. at 64], and Barbee v. State, 417 So.2d 611 (Ala.Crim.App. 1982), citing Crump v. State, 30 Ala. App. 241, 4 So.2d 188 (1941), which held as follows:
 " 'Upon these authorities we conclude that a reference in an indictment to the statute defining the offense cannot be considered for the purpose of supplying an allegation of criminal intent which is an essential element of the offense and has been omitted from the indictment.'
 "Barbee, 417 So.2d at 614. Morrison asserts that the indictment fails to aver the necessary criminal mental culpability state of 'knowingly.' Said omission cannot be corrected by the trial judge without violating the Crump case, supra. The action of the trial judge in charging on 'knowingly,' and approval of that action in the instant opinion, conflicts with Crump as cited in Barbee:
 "A Court is 'without authority to add to, or take away from, any of the material averments in the indictment, which speaks for itself and is conclusive.'
"417 So.2d at 614.
 "The Honorable Court of Criminal Appeals erred in affirming the trial judge's ruling which overruled Morrison's demurrer, and approving the 'redrawing' of the indictment during the Court's oral charge to the jury by interjection of an omitted 'material element' of the offense charged."
In a subsequent case, Stewart v. State, 580 So.2d 27
(Ala.Crim.App. 1990),[11] the Court of Criminal Appeals described the rationale in Morrison as "convoluted," and cited Barbee v.State, 417 So.2d 611 (Ala.Crim.App. 1982), and Davis v.State, 68 Ala. 58 (1880), the same two cases cited in theMorrison petition, a petition that was denied by this Court, without opinion. 455 So.2d 240 (Ala. 1984).
In Stewart, the Court of Criminal Appeals, without noting or discussing the fact that this Court had refused to review theMorrison opinion, specifically addressed the Morrison opinion as follows:
 "The state also contends that this indictment is deemed sufficient by the court's holding in Morrison v. State, 455 So.2d 240, 243
(Ala.Crim.App. 1984), to the effect that a trafficking indictment charging simply 'unlawfully' is adequate. The Morrison court rationalized that '[w]hen the indictment charges "unlawful" possession, then by inference it means "knowing" possession.' Id. The state argues that the instant indictment is sufficient because, when appellant was indicted for 'violation of the Alabama Controlled Substances Act,' he was put on notice that the charged conduct was allegedly unlawful and, according to Morrison, an allegation of 'unlawful' suffices for an allegation of 'knowing.' We decline to adopt this convoluted rationale. To do so would be, in essence, to hold that no indictment for any crime need allege a culpable mental state, for the act of being indicted is equivalent to an allegation of a culpable mental state. It suffices to note that such a holding would be contrary to Davis v. State and Barbee v. State. Moreover, we have serious *Page 1191 
doubt about the finding in Morrison, especially when no case law was cited to which we can resort to better understand the rationale behind the holding. Compare, e.g., Chance v. State, 563 S.W.2d 812 (Tex.Cr.App. 1978) (wherein the court, after an excellent discussion, held that an indictment that alleged 'unlawfully' was void for failure to allege the statutory element of 'knowingly'). We cannot say that 'unlawfully' conveys the statutory definition of 'knowingly,' found in § 13A-2-2(2) (which states that '[a] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of that nature or that the circumstance exists'). In conclusion, we find that the indictment contains no words that are the equivalent of 'knowingly.' We are not swayed by the state's reliance on Jackson v. State, 484 So.2d 1174 (Ala.Crim.App. 1985), and Campbell v. State, 479 So.2d 1294 (Ala.Crim.App.), aff'd, 479 So.2d 1299 (Ala.), cert. denied, 474 U.S. 1021, 106 S.Ct. 573, 88 L.Ed.2d 557 (1985). In these cases, the court, in its opinions, sets out the indictments for trafficking. They have no allegation of 'knowingly.' This deficiency was not raised in either case and was not reached by the reviewing court; thus, we find these cases to be of no authority here."
580 So.2d at 30.
In Stewart, this Court granted the State's petition for the writ of certiorari, but then quashed the writ as having been improvidently granted. In doing so, we now conclude, we erred.Stewart should no longer be followed for the proposition that the failure of an indictment to allege that the offense was "knowingly" committed can be raised for the first time aftertrial. Likewise, Morrison should not be followed insofar as it holds that "unlawfully," by inference, means "knowingly." If an objection is timely made, as we shall later discuss, the point is preserved.
Temporary Rule 16.2 (now Rule 15.2)[12] provided, in part, as follows:
 "(a) Objections and Defenses Which Must Be Raised by Pre-trial Motion. Objections based on defects in the commencement of the proceeding or in the charge, other than lack of subject matter jurisdiction or failure to charge an offense, may be raised only by pre-trial motion made in accordance with Temporary Rule 16.3 [now Rule 15.3].
". . . .
 "(d) Objections Which May Be Raised at Any Time.
The lack of subject matter jurisdiction or the failure of the charge to state an offense may be raised by the court or by motion of the defendant at any time during the pendency of the proceeding. Once such an issue is raised by the court, the procedure thereafter shall be the same as if the defendant had raised the issue by appropriate motion."
It is clear that most objections to criminal charges must be raised before trial The exceptions are for objections based upon lack of subject matter jurisdiction and failure to charge an offense.[13] Those two objections can be raised "by the *Page 1192 
court or by motion of the defendant at any time during thependency of the proceeding." (Emphasis added). Temporary Rule 16.2(d) (now Rule 15.2(d)). "Pendency of the proceeding" obviously refers only to the proceeding in the trial court, and this interpretation of the Rule is consistent with federal cases interpreting a similar rule of criminal procedure. InUnited States v. Pupo, 841 F.2d 1235 (4th Cir. 1988), defendants were convicted of various narcotics-related offenses. Defendant Pupo at the close of the Government's case, objected that two counts of the indictment were invalid for failure to include an element of the crime charged (the statute used the word "knowingly or intentionally" and the offenses were alleged as having been "unlawfully" committed). A divided court, sitting en banc, held:
 "The attack on Counts III and IV by Pupo is more serious. Counts III and IV were single-paragraph counts charging possession with intent to distribute and actual distribution of cocaine. A comparison between the elements of the offense shown in the indictment and the elements set out in the statute shows that both of these counts failed to allege, either expressly or through words of import, that the defendants acted 'knowingly or intentionally.' It is well established that an indictment is defective if it fails to allege elements of scienter that are expressly contained in the statute that describes the offense. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). 'Knowingly or intentionally' is a definite element of the offense charged under 18 U.S.C. § 841(a)(1) (1982). Under similar circumstances, we held in Finn v. United States, 256 F.2d 304, 306 (4th Cir. 1958), that '[w]here willfulness or knowledge is made an element of the crime, the statutory requirement is not to be ignored. The charge must either include these terms, or words of similar import.' The words 'knowingly or intentionally' themselves 'or words of similar import' did not appear in the count attacked, and, therefore, the count was found defective. That case is apposite here.
 "We refuse to follow the case on which the district court relied in dismissing the objection, United States v. Arteaga-Limones, 529 F.2d 1183
(5th Cir. 1976), cert. denied, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976), in which the court held that scienter was adequately charged if the indictment also cited the statute itself. That position is contrary to our own precedents as well as the law in a majority of the circuits. See Finn, supra. We have uniformly dismissed on objection before verdict indictments for failure to include an essential statutory element despite the inclusion of a citation to the statute itself in the indictment. See United States v. Hooker, 841 F.2d 1225 (4th Cir. 1988); United States v. Hayes, 775 F.2d 1279, 1282 (4th Cir. 1985); United States v. Pomponio, 517 F.2d 460, 461 (4th Cir. 1975), cert. denied, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). We hold that a mere citation to the applicable statute does not give the defendant notice of the nature of the offense. An indictment that must rely on a statutory citation does not 'fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.' See Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907-08, 41 L.Ed.2d 590 (1974). Furthermore, a statutory citation does not ensure that the grand jury has considered and found all essential elements of the offense charged. It therefore fails to satisfy the Fifth Amendment guarantee that no person be held to answer for an infamous crime unless on indictment of a grand jury. See Hooker, supra.
 "As we stated in Hooker, when an indictment fails to include an essential element of the offense charged, it thereby fails to charge any federal offense and a conviction under the indictment may not stand, provided the omission is timely raised. Such an objection is timely filed at any time prior to verdict. Fed.R.Crim.P. 12(b). In this case, the objection was raised at the conclusion of the government's case and before verdict. *Page 1193 
The objection in this case was thus timely and should have been sustained. The argument of the government for a liberalization of the rule that the failure of the indictment to include an essential element of the crime would render the indictment in this case [invalid] overlooks that such liberalization is allowable only where the objection is raised after verdict. This is implicit in the language in Finn v. United States, supra, 256 F.2d at 307, in which Judge Sobeloff said:
 " 'Indictments and informations are construed more liberally after verdict than before, and every intendment is then indulged in support of the sufficiency.'
 "The contention here was raised before verdict and the liberalization rule is inapplicable. Nor will the fact that the district judge in his jury instructions correctly identified all the elements of the crime charged render the omission in the indictment of such allegation harmless, provided, of course, the objection is raised before verdict."
841 F.2d at 1238-39 (footnotes omitted) (emphasis added). The holding in Pupo, construing a similar federal rule, is consistent with the language of Temporary Rule 16.2(d) (now Rule 15.2(d)), that a defendant must object to the failure of the indictment to state a charge "during the pendency of the proceeding." See also, 8 R. Cipes, M. Waxner, S. Allen,Moore's Federal Practice ¶ 12.03[1], pp. 12-18 through 12-23 (2d ed. 1989).
During the same term that the Court of Criminal Appeals decided Stewart, the court decided this case and Whatley v.State, 586 So.2d 966 (Ala.Crim.App. 1991), cert. denied, [Ms. 1901367, September 27, 1991] (Ala. 1991), and Hill v. State,579 So.2d 710 (Ala.Crim.App. 1991), cert. denied,596 So.2d 659 (Ala. 1991).
In Whatley, the Court of Criminal Appeals was called upon, as it was in this case, to consider the sufficiency of an indictment that tracked the language of the statute. InWhatley, the statute allegedly violated did not use the word "knowingly," as was the case in Stewart, but used the word "unlawful" instead. In Whatley, the defendant contended, as the petitioner does here,[14] that the indictment, which alleged that he "unlawfully" possessed a controlled substance failed to charge a criminal act and was, therefore, void. The Court of Criminal Appeals, citing and quoting from State v. Palmer,546 So.2d 1005 (Ala.Crim.App.), cert. denied, Ex parte Palmer,546 So.2d 1008 (Ala. 1988), noted that the indictment tracked the language of the statute and held that the accused was sufficiently informed of the accusation.
It is apparent from its holdings in Stewart, Whatley, Hill, and this case that the Court of Criminal Appeals makes a distinction based upon the particular language of the statute allegedly violated, and if the statute states that the offense must be "knowingly" done, then that court holds that the indictment must allege that culpable mental state and holds that an indictment, based on such a statute, that does not contain such an allegation is, fatally defective and will not support a conviction. That court, in Stewart, stated the following:
 "Alabama courts have expressly recognized that knowledge is an essential element to the conviction for an offense involving possession of a controlled substance. See, e.g., Walker v. State, 356 So.2d 672 (Ala. 1977) (possession); Donahoo v. State, 505 So.2d 1067, 1070 (Ala.Crim.App. 1986) (trafficking). Because it is an essential element, knowledge should have been alleged in the indictment. See 28 C.J.S. Drugs and Narcotics Supplement § 184(a) (1974) (wherein it is recognized, '[w]here knowledge on the part of accused of the nature of the contraband possessed is necessary to sustain a conviction of an offense of possession of narcotics the indictment must allege such knowledge'). Compare Thompson v. State, 454 So.2d 1053, 1055-56 (Ala.Crim.App. 1984) (where the court ruled that an indictment charging unlawful possession of marijuana, pursuant *Page 1194 
to § 2-2-70 which does not expressly include 'knowledge' as an element, is not void for failing to charge that the defendant knowingly possessed marijuana). See also 28 C.J.S. supra, at § 184 (wherein it is noted that 'it is not necessary that scienter be alleged in an indictment charging a narcotics offense unless by statute it is made an element of the offense that the prohibited act be knowingly or willfully done')."
580 So.2d at 28-29. The Court of Criminal Appeals correctly held, in Stewart, that if a statute requires that the offense be "knowingly" committed, then the indictment should allege that it was so committed, and if an objection to the indictment is raised by the trial court or the defendant "during the pendency of the proceeding," the indictment is defective and would be subject to dismissal, unless otherwise provided for in Temporary Rule 15.5(c)(2) (now Rule 13.5(c)(2)), which states, in part, that "[n]o charge shall be deemed invalid, nor shall the trial, judgment, or other proceedings thereon be stayed, arrested, or in any manner affected, for any defect or imperfection in the charge which does not tend to prejudice the substantial rights of the defendant upon the merits."
As pointed out already, many of the cases that discuss the requirements of indictments were decided before this State adopted the Alabama Criminal Code and before this Court adopted the Rules of Criminal Procedure. Temporary Rule 15.2(b) (now Rule 13.2(b)), which applied to this case, provided, "The indictment or information shall state for each separate offense . . . the official or customary citation of the statute, rule, regulation, or other provision of law which the defendant is alleged to have violated," and Temporary Rule 16.2(d) (now Rule 15.2(d)) required the defendant to raise any objection to the sufficiency of the charge at least "during the pendency of the proceeding." Furthermore, the defendant here could have filed a motion for a more definite statement of the charge, a procedure mentioned, but unavailable, in Gayden. Before joining issue on the charge, the petitioner also could have raised, by motion, any alleged defect in the charge, including an objection that the charge failed to state an offense. Temporary Rule 16.2(d) (now Rule 15.2(d)). He did neither. Even if he had a valid objection to the statement of the charge, and we find that he did not have a valid objection in this case, he failed to raise an objection timely.
Based on the foregoing, we are clear to the conclusion that the defendant's constitutional right "to demand the nature and cause of the accusation" (Art. 1, § 6, Const. of Ala. 1901) has been fulfilled in this case. The indictment is not void for failing to allege that the offense was committed "knowingly."
This opinion should not be construed, however, as stating that the State may not be required to prove that the defendant knew of the presence of a controlled substance, for example, as in Ex parte Story, 435 So.2d 1365 (Ala. 1983), where this Court reversed Story's conviction for possession of methaqualone because the State had not proved his "knowledge of the presence of the controlled substance . . . beyond a reasonable doubt."435 So.2d at 1366. Similarly, the Court of Criminal Appeals has held that knowledge must be proved in order to establish that an offense was committed. See, e.g., McGruder v. State,560 So.2d 1137 (Ala.Crim.App. 1989) ("A conviction for the possession of illegal drugs cannot be based on constructive possession alone. . . . Where . . . the state relies on constructive possession, it is necessary that the prosecution prove that the defendant had knowledge of the presence of the illegal drugs . . . [, which] 'may be established by circumstantial evidence' "); Butler v. State, 531 So.2d 52
(Ala.Crim.App. 1988) ("In order to prove unlawful possession of cocaine . . . the State must show actual or potential physical control of the cocaine, the intention to exercise dominion over the cocaine, knowledge of its presence, and external manifestations of intent and control"); Korreckt v.State, 507 So.2d 558 (Ala.Crim.App. 1986); White v. State,479 So.2d 1368 (Ala.Crim.App. 1985); and Lyons v. State,455 So.2d 295 (Ala.Crim.App. 1984) ("Where the accused is not in *Page 1195 
exclusive possession of the premises, his knowledge of the presence of the controlled substance may not be inferred 'unless there are other circumstances tending to buttress this inference," citing Temple v. State, 366 So.2d 740
(Ala.Crim.App. 1978)); Walker v. State, 356 So.2d 674 (Ala.Crim.App. 1978), cert. denied, Ex parte Walker, 356 So.2d 677 (Ala. 1978) ("From the facts and circumstances of the case it is our conclusion that there was evidence from which the jury could have reasonably inferred that the appellant knew that the parcel contained a narcotic").
Based on the above, we hold that the indictment was not void for its failure to allege that the distribution of the controlled substance was "knowingly" done. We further hold that the petitioner's objection was untimely, because it was not made "during the pendency of the proceeding."
 II
We next address the petitioner's contention that the Court of Criminal Appeals erred in holding that his claim of ineffective assistance of counsel was procedurally barred. The State agrees with the petitioner's argument that a claim of ineffective assistance of counsel can be raised on direct appeal where new counsel is appointed or retained on appeal, as was the case here. See, Ex parte Ellison, 410 So.2d 130 (Ala. 1982); Jonesv. State, 484 So.2d 554 (Ala.Crim.App. 1986); Carroll v.State, 462 So.2d 789 (Ala.Crim.App. 1984). The State, nevertheless, argues that the petitioner's claim is barred.
The facts are that the petitioner's trial counsel had died and the petitioner was appointed new counsel. The State contends that the rule stated in Ex parte Ellison is inapplicable here and makes the following argument:
 "In the case at bar, the Petitioner was sentenced on October 13, 1989. In the interim, Petitioner did not file a motion for new trial in which he could have raised the issue of ineffective assistance of counsel. See, Scoggins v. State, 398 So.2d 353 (Ala.Crim.App. 1981) (ineffective assistance of counsel will support a motion for new trial). The question of an appeal was presented three months later when Petitioner filed a 'motion for permission to appeal out of time.' The State submits that even then there was no mention of trial counsel's performance being less than adequate. Further, Petitioner was granted permission to file an out of time appeal, this issue still not raised. Moreover, Petitioner had the representation of counsel on appeal approximately seven months before the record on appeal was actually filed and the briefing period began. This was adequate time for Petitioner to have presented the issue to the trial court. Since this was the only issue presented by the Petitioner, obviously Petitioner was well aware of the facts supporting the claim. Therefore, in view of the fact that the Petitioner had opportunity to present the claim to the trial court but failed to do so, this Court should decline to review the issue on the merits."
We recognize that the petitioner was granted an out-of-time appeal in this case, and we can only conclude that that fact was considered by the Court of Criminal Appeals in its decision to hold that the petitioner's claim of ineffective assistance of counsel was barred. The petitioner answers the State by arguing that during much of the time after his trial he was unrepresented because his trial counsel had died. The only relief he asks of us in regard to this issue is that we remand the cause to the Court of Criminal Appeals with instructions to that Court to review his ineffective assistance of counsel claim. We believe that justice requires that this claim be reviewed, either in that court or in the trial court. Consequently, we remand the cause for that review. SeeThompson v. State, 525 So.2d 820 (Ala. 1985).
 III
Although the Court of Criminal Appeals correctly held that the indictment was not void for its failure to allege that the distribution of the controlled substance was "knowingly" done, that court erred in holding that it would not review the petitioner's *Page 1196 
claim of ineffective assistance of counsel. Therefore, we reverse the judgment of the Court of Criminal Appeals affirming the judgment of conviction, and we remand this case to that court for it to review that claim or to remand for the circuit court to review it.
REVERSED AND REMANDED.
HOUSTON, KENNEDY and INGRAM, JJ., concur.
HORNSBY, C.J., and SHORES and STEAGALL, JJ., concur in the result.
[1] The indictment follows substantially a form of indictment included in the Indictment and Warrant Manual (1988), a publication prepared by an outstanding group of trial judges and criminal defense lawyers and developed and distributed by the Alabama Law Institute.
[2] A close reading of Gayden shows that the Court reached the conclusion that it did because Alabama did not provide a procedure at that time, by a bill of particulars, to supplement "a vague and indefinite indictment so as to afford an accused due process of law." 262 Ala. at 474, 80 So.2d at 507. Temporary Rule 15.2(e) (now Rule 13.2(e), Ala.R.Crim.P.) provided this defendant, had he requested it before joining issue on the indictment, the right to move for a more definite statement of the charge. Had such a procedure been available inGayden, it appears that the result reached there would have been different.
[3] It should be noted that the crime alleged in Morissette was a "property" crime and that the word "knowingly" was used in the statute creating the offense. Some courts make a distinction between charging and proving crimes against persons and property and those charging so-called "public welfare offenses."
[4] Walker v. State, 356 So.2d 668 (Ala.Cr.App. 1977), reversed and remanded, 356 So.2d 672 (Ala. 1977), after remand,356 So.2d 674 (Ala.Cr.App. 1978).
[5] Concurring in the original opinion in Walker were Chief Justice Torbert and Justices Almon, Shores, and Embry; Justices Bloodworth, Maddox, and Beatty concurred specially, with an opinion by Justice Bloodworth; but on denial of the State's application for rehearing, Justices Bloodworth, Maddox, and Beatty dissented. The fact that Justices Bloodworth, Maddox, and Beatty dissented from the denial of rehearing is not shown by the report of the case at 356 So.2d 672, but the official record on file in this Court shows that they dissented without opinion on November 4, 1977.
[6] In Walker, the Court of Criminal Appeals, after this Court had remanded the cause, addressed the requirement of proving knowledge, and stated, "Because the element of knowledge is seldom susceptible to direct proof, it may be proved by evidence of acts or conduct of the accused from which it may fairly be inferred that he knew of the existence of the narcotics at the place where they were found."356 So.2d at 676. This Court denied certiorari, without opinion,356 So.2d 677.
[7] The original records in Walker show that the indictment in that case read as follows:
 "The Grand Jury of said County charge that before the finding of this Indictment Claudia Mae Walker, whose name is otherwise unknown to the Grand Jury, did . . . unlawfully possess a controlled substance, to-wit: Atty. Gen., heroin, against the peace and dignity of the State of Alabama." (Emphasis added.)
[8] The State, on application for rehearing in Walker, stated:
"The State does not take opposition to the holding of this Honorable Court that '. . . knowledge is an essential element of the offense of illegal possession of a controlled substance under the Alabama Controlled Substances Act,' " but stated that "[t]he contention of the State of Alabama is simply that the appellate courts of Alabama have also held that proof of knowledge can be established by circumstantial evidence. [Citing cases.]" Original state's motion for rehearing inEx parte Walker, S.C. 2381, at pp. 1-2 (1977), which is on file.
[9] The Alabama Criminal Code became effective at 12:01 a.m. on January 1, 1980. Ala. Code 1975, § 13A-1-11.
[10] Adopted January 3, 1983; effective March 1, 1983.
[11] All the Judges on the Court of Criminal Appeals concurred in the opinion in Morrison, but each of them also concurred inStewart, which called the Morrison rationale "convoluted." This Court refused to review Morrison, and quashed the writ of certiorari it had issued in Stewart.
[12] Temporary Rule 13.2 was in effect at the time both Stewart and this case were pending.
[13] The Committee Comments to our present Rule 15.2 (formerly Temporary Rule 16.2) state:
 "Rule 15.2 requires that certain objections be made and defenses raised by motion before trial. Objections to the venire or to an individual grand juror or to the venue must be raised by such a motion before trial.
 "The exceptions are lack of subject matter jurisdiction and failure to charge an offense. The rule is different from Rule 12(b)(2), Fed.R.Crim.P., in that it adds the words 'subject matter' before the word 'jurisdiction.' This merely expresses the accepted interpretation of the federal rule, since objections to personal jurisdiction can be waived by failure to timely object. See Hess v. United States, 254 F.2d 578
(8th Cir. 1958).
 "If a defendant wishes to raise the defense of double jeopardy, the denial of a speedy trial, or any similar defense, the defense should be raised by a motion under this rule.
 "Section (e) provides that one does not have to withdraw a plea previously entered before one can take advantage of a defense or objection by motion. Under prior practice, a plea of not guilty had to be withdrawn before a plea in abatement or motion to quash could be entered."
[14] Counsel for the petitioner in this case was also counsel for Whatley.