42 So.3d 146 (2009)
Ex parte State of Alabama.
(In re A.L.L. v. STATE of Alabama).
1080395.
Supreme Court of Alabama.
August 21, 2009.
*147 Troy King, atty. gen., and John M. Porter, asst. atty. gen., for petitioner.
James A. Jacobs, Ariton, for respondent.
WOODALL, Justice.
On August 4, 2005, A.L.L. was operating a motor vehicle at a speed exceeding the posted limit. The vehicle left the roadway and struck a tree. One passenger in the vehicle, Montez Kelly, was killed, and another passenger, Michael Grace, was injured.
A.L.L. was indicted for vehicular homicide, a violation of § 32-5A-192, Ala.Code 1975, and for assault in the second degree, a violation of § 13A-6-21, Ala.Code 1975. A.L.L. applied for and was granted youthful-offender status. After a bench trial, the trial court adjudicated A.L.L. a youthful offender on the basis of the underlying charges of vehicular homicide and second-degree assault. He was sentenced to concurrent three-year terms in the community-corrections program and ordered to serve six consecutive weekends in jail and to perform community service. A.L.L. appealed.
The Court of Criminal Appeals reversed the judgment of the trial court and remanded the case for further proceedings. A.L.L. v. State, [Ms. CR-06-1500, September 26, 2008] 42 So.3d 138 (Ala.Crim.App. 2008). The Court of Criminal Appeals reversed the trial court's adjudication of A.L.L. as a youthful offender based on the underlying charge of vehicular homicide, without prejudice to his reindictment. Further, it reversed its adjudication of A.L.L. as a youthful offender based on the underlying charge of second-degree assault and remanded the case for the trial court to adjudicate him based on an underlying offense of third-degree assault. We granted the State's petition seeking certiorari review of the judgment of the Court of Criminal Appeals insofar as it reversed the judgment of the trial court adjudicating A.L.L. a youthful offender based on the underlying charge of vehicular homicide. We reverse that portion of the judgment of the Court of Criminal Appeals and remand the case for the entry of a judgment consistent with this opinion.
In the trial court, A.L.L. moved to dismiss the vehicular-homicide count of his indictment, arguing that the failure to allege as part of that count a culpable mental state rendered the count fatally defective. The trial court denied the motion, and the Court of Criminal Appeals held that the trial court erred in doing so. The Court of Criminal Appeals explained, in pertinent part:
"Count I of the indictment alleged:

*148 "`ON OR ABOUT AUGUST 4, 2005, ONE [A.L.L.], DID UNLAWFULLY AND UNINTENTIONALLY CAUSE THE DEATH OF ANOTHER PERSON WHILE ENGAGED IN THE VIOLATION OF ANY STATE LAW OR MUNICIPAL ORDINANCE APPLYING TO THE OPERATION OR USE OF A VEHICLE, TO-WIT: SPEEDING, AND SAID VIOLATION IS THE PROXIMATE CAUSE OF DEATH, IN VIOLATION OF SECTION 32-5A-192 OF THE CODE OF ALABAMA.'
"(C. 12; capitalization in original.)
"Section 32-5A-192(a), Ala.Code 1975, provides:
"`(a) Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle, or vessel, as defined in Section 33-5-3, or to the regulation of traffic or boating, shall be guilty of homicide when the violation is the proximate cause of the death.'
"Although § 32-5A-192 does not include a mens rea element, in Ex parte Edwards, 816 So.2d 98 (Ala.2001), the Alabama Supreme Court held that vehicular homicide was not a strict-liability crime, but required a mens rea other than intentionally, specifically, either knowingly, recklessly, or negligently under § 13A-2-2(2), (3), or (4), Ala.Code 1975, respectively. The Court also noted that an indictment charging vehicular homicide should include a mens rea element.
"In Chatman v. State, 813 So.2d 956 (Ala.Crim.App.2001), this Court followed Ex parte Edwards and reversed Chapman's guilty-plea conviction for vehicular homicide on the ground that the indictment was defective for not charging a culpable mental state; we explained:
"`In Ex parte Edwards, 816 So.2d 98 (Ala.2001), The Alabama Supreme Court reversed our judgment and rendered a judgment for Edwards because the indictment was fatally defective with respect to the charge of vehicular homicide. In Edwards, the Court stated that "[a]n indictment under § 32-5A-192[ (a), Ala.Code 1975,] should charge an appropriate mental state based on § 13A-2-2(2) to (4)." Moreover, because the appellant was acquitted on the manslaughter and the criminal-negligence charges, [s]he was effectively acquitted of vehicular homicide, and, therefore, the trial court erred in denying her motion for a judgment of acquittal. See Ex parte Rice, 766 So.2d 143, 147 (Ala. 1999).
"`In Ex parte Burnett, 807 So.2d 586 (Ala.2001), the Alabama Supreme Court addressed issues identical to those raised in Edwards, but reversed our judgment and remanded the case for further proceedings consistent with that opinion on grounds that the jury in Burnett did not make any findings as to any charged offense other than vehicular homicide. Because the Supreme Court, in Burnett, did not render a judgment in favor of the appellant, as it did in Ex parte Edwards, this Court, on remand from the Alabama Supreme Court, held that the State can reindict the appellant for vehicular homicide using the language set forth in Ex parte Edwards, supra. See Burnett v. State, 807 So.2d 588 (Ala.Crim.App.2001).
"`As in Ex parte Edwards, and Ex parte Burnett, the indictment in the instant case did not charge a mental state, and is, therefore, fatally defective *149 with respect to the vehicular-homicide charge. ... Because there has been no adjudication in this case regarding the sufficiency of the evidence to support the appellant's vehicular-homicide charge, the State can, however, reindict the appellant for vehicular homicide using the language set forth in Ex parte Edwards, supra.'
"813 So.2d at 957-58 (emphasis added in [A.L.L.]).
"We recognize that this Court has, in some circumstances, upheld indictments that did not charge a mens rea element, finding in those cases that the indictments sufficiently apprised the defendants of the nature of the charges against them. See Sullens v. State, 878 So.2d 1216 (Ala.Crim.App.2003), and the cases cited therein. However, none of those cases dealt with the vehicular-homicide statute, and this Court did not overrule Chatman in those opinions. Therefore, Chatman is controlling in this case.
"Based on our holding in Chatman, we are compelled to reverse A.L.L.'s adjudication as a youthful offender based on the underlying charge of vehicular homicide. However, as in Chatman, the State can reindict A.L.L. for vehicular homicide `using the language set forth in Ex parte Edwards, supra.' Chatman, 813 So.2d at 958."
A.L.L., 42 So.3d at 142. The Court of Criminal Appeals has misconstrued this Court's holding in Ex parte Edwards, 816 So.2d 98 (Ala.2001).
In Edwards, "this Court held that the vehicular-homicide statute did not state an offense of strict liability and that the court should instruct the jury on one of the culpable mental states set forth in the Criminal Code at § 13A-2-2 (the mental states exhibited by persons acting `knowingly,' `recklessly,' or in a `criminally negligen[t]' manner) if the evidence before the [c]ourt supports such an instruction." Ex parte Burnett, 807 So.2d 586, 587 (Ala. 2001). In other words, this Court construed the word "unintentionally" as used in § 32-5A-192(a) "to refer to all forms of mens rea except that described by the word `intentional.'" Edwards, 816 So.2d at 107.
In Edwards, this Court stated that "[a]n indictment under § 32-5A-192[ (a) ] should charge an appropriate mental state based on § 13A-2-2(2) to (4)." 816 So.2d at 109 (emphasis added). However, although "Edwards's indictment did not describe a necessary mental state and the court refused her request for an instruction on a culpable mental state," id., we did not premise our holding on either of those failures. Instead, we rendered a judgment of acquittal "[b]ecause Edwards [had been] acquitted of both manslaughter (ruling out recklessness) and criminal negligence." Id.
Soon after our decision in Edwards, the Court of Criminal Appeals, seizing upon our statement that an indictment for vehicular homicide should charge an appropriate mental state, held that an "indictment [that] did not charge such a mental state... was void." Burnett v. State, 807 So.2d 588, 589 (Ala.Crim.App.2001). In so holding, the Court of Criminal Appeals misconstrued our holding in Edwards. As already stated in this opinion, our holding in Edwards was not based on any deficiency in Edwards's indictment, and we certainly did not hold that the indictment was void. Indeed, at the time of our decision in Edwards, an indictment that failed to state an essential element of the charged offense did not invoke the subject-matter jurisdiction of the trial court to render judgment and impose sentence. See, e.g., Ex parte Lewis, 811 So.2d 485 (Ala.2001), overruled, Ex parte Seymour, 946 So.2d 536 (Ala. *150 2006). Thus, our holding in Edwards that "the [trial] court should have granted Edwards's... motion for a judgment of acquittal," 816 So.2d at 109, clearly indicated that the failure of the indictment to charge an appropriate mental state had not deprived the trial court of subject-matter jurisdiction over the vehicular-homicide charge. As the Court of Criminal Appeals has correctly acknowledged, "`Edwards stands for the proposition that the trial court could have cured the [omission of a culpable mental state from the] indictment in its instructions to the jury.'" Sullens v. State, 878 So.2d 1216, 1228 (Ala.Crim.App. 2003) (quoting appellant's brief).
In reversing the trial court's adjudication of A.L.L. as a youthful offender on the underlying vehicular-homicide charge, the Court of Criminal Appeals stated that it was compelled to reverse that adjudication based on its holding in Chatman v. State, 813 So.2d 956 (Ala.Crim.App.2001). In Chatman, the Court of Criminal Appeals stated that this Court, in Edwards, had "rendered a judgment for Edwards because the indictment was fatally defective with respect to the charge of vehicular homicide." 813 So.2d at 957. However, as already twice stated in this opinion, our holding in Edwards was not based on any defect in Edwards's indictment. Based upon its misconstruction of Edwards, the Court of Criminal Appeals held that Chatman's indictment was void, because, that court reasoned, it "did not charge a mental state, and [was], therefore, fatally defective with respect to the vehicular-homicide charge." 813 So.2d at 958. Although the Court of Criminal Appeals in Chatman acknowledged our holding in Edwards that "the trial court erred in denying [Edwards's] motion for a judgment of acquittal," 813 So.2d at 957, and itself held that a void indictment confers no jurisdiction on the trial court, it made no attempt to explain how this Court could have rendered a judgment of acquittal for Edwards if his indictment was, in fact, void.
A.L.L.'s indictment substantially followed the language of § 32-5A-192(a). It was "a plain, concise statement of the charge in ordinary language sufficiently definite to inform a defendant of common understanding of the offense charged Rule 13.2(a), Ala. R.Crim. P. The vehicular-homicide indictment clearly "`"`apprise[d] [A.L.L.] with a reasonable certainty of the nature of the accusation against him so that he [could] prepare his defense and plead the judgment of conviction as a bar to any subsequent prosecution for the same offense.'"'" Shouldis v. State, 953 So.2d 1275, 1283 (Ala.Crim.App. 2006) (quoting Moore v. State, 697 So.2d 800, 802 (Ala.Crim.App.1996), quoting in turn other cases). Had A.L.L. felt that additional details concerning the alleged offense were needed, he could have made a motion for a more definite statement. See Rule 13.2(e), Ala. R.Crim. P. Under these circumstance, the absence of a mens rea averment in the indictment did not render the indictment fatally defective or void. See Sullens, supra (holding that the trial court did not err in denying the defendants' motion to dismiss indictments charging them with shooting into an occupied vehicle when the indictments tracked the language of the applicable statute, but did not allege any culpable mental state), and the cases cited therein.
For these reasons, we reverse the judgment of the Court of Criminal Appeals insofar as that court reversed the judgment of the trial court adjudicating A.L.L. a youthful offender based on the underlying charge of vehicular homicide, and we remand the case to the Court of Criminal Appeals for the entry of a judgment consistent with this opinion. Furthermore, we overrule Chatman v. State, 813 So.2d 956 (Ala.Crim.App.2001), and Burnett v. *151 State, 807 So.2d 588 (Ala.Crim.App.2001), because in those opinions the Court of Criminal Appeals misconstrues the holdings and statements of this Court in Edwards.
REVERSED AND REMANDED.
LYONS, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
COBB, C.J., and MURDOCK, J., dissent.
SHAW, J., recuses himself.[*]
COBB, Chief Justice (dissenting).
I respectfully dissent. The majority reverses the judgment of the Court of Criminal Appeals and criticizes that court for "misconstruing" Ex parte Edwards, 816 So.2d 98 (Ala.2001), and Ex parte Burnett, 807 So.2d 586 (Ala.2001), which relied on Ex parte Edwards. It is easy to grasp why the Court of Criminal Appeals would have difficulty construing those cases  they raise more questions than they answer. I continue to believe that this Court wrongly decided Edwards by attempting to uphold the vehicular-homicide statute, Ala.Code 1975, § 32-5A-192, without addressing the inherent constitutional defects of the statute.[1]See Burnett v. State, 807 So.2d 588, 589 (Ala.Crim.App.2001) (Cobb, J., dissenting). Accordingly, I cannot join the majority in reversing the judgment of the Court of Criminal Appeals in reliance on Edwards.
In Edwards, this Court expressly declined to address the constitutionality of the vehicular-homicide statute. Instead, the Court held that the vehicular-homicide statute was not a strict-liability statute. The Court also held that the term "unintentionally" as used in the statute referred to one or more of the following types of mens rea: knowingly, recklessly, or with criminal negligence. Thus, the Edwards Court exercised the prerogative of the legislature and amended the vehicular-homicide statute to include culpable mental states normally required for a violation of a criminal statute.[2] In the process, this Court disregarded a fundamental tenet of American jurisprudence: "Historically, the narrowest or strictest construction is mandated for criminal statutes." Burnett v. State, 807 So.2d at 591 (Cobb, J., dissenting) (citing Ex parte Mutrie, 658 So.2d 347, 349 (Ala.1993)).
However well meaning the Edwards majority's attempt to preserve the vehicular-homicide statute,[3] the opinion instead raises *152 additional significant problems. To pass constitutional muster, a criminal statute must clearly inform those who are subject to it what is commanded or what is forbidden. See Smith v. Goguen, 415 U.S. 566, 574, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (quoting Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939)) ("Due process requires that all `be informed as to what the State commands or forbids.'"). The criminal statute must be worded so that citizens of common intelligence are not forced to guess at its meaning. United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 1845, 170 L.Ed.2d 650 (2008) (citing Hill v. Colorado, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000), and Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)) ("A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited. ..."). The term "unlawfully and unintentionally" as used in the vehicular-homicide statute was "problematic phraseology," even to the legally sophisticated Justices of the Edwards Court. 816 So.2d at 106. Those words plainly do not inform a person of ordinary understanding that the vehicular-homicide statute prohibits conduct that is knowing, reckless, or criminally negligent.
With its decision today, the Court compounds the problems created by Edwards by expanding the original holding of Edwards. In addition to its erroneous holding concerning the meaning of the term "unlawfully and unintentionally" in the vehicular-homicide statute, Edwards holds only that because Edwards was acquitted of manslaughter and criminal negligence, she was necessarily acquitted of any culpable mental state applicable to vehicular homicide; the Court therefore entered a judgment of acquittal. The discussion of an instruction to the jury on an appropriate mental state in Edwards is entirely irrelevant to its holding. As the majority here recognizes, the Edwards Court did not address whether the failure to charge a specific culpable mental state constituted a fatal defect in the indictment. However, the majority would now state that Edwards established an additional legal principle: that proper jury instructions are sufficient to cure the failure in an indictment to charge a culpable mental state. Under the majority's view of Edwards, a defendant may be charged with vehicular homicide and not be informed of the mental state that results in his or her liability until the jury is charged, i.e., after the defendant is required to have presented his or her defense. Edwards did not so hold and cannot properly be expanded to support such a conclusion.[4]
*153 Similarly, the majority relies on Edwards to support its conclusion that an indictment charging vehicular homicide is sufficient to state a charge if it merely tracks the language of the statute without specifically alleging one of the necessary culpable mental states set forth in Edwards, even though Edwards did not address that issue. As the majority notes, Edwards was decided at a time when a trial court had no jurisdiction over an indictment that failed to state an essential element of the charge.[5] Thus, according to the majority, the "holding in Edwards that `the [trial] court should have granted Edwards's ... motion for a judgment of acquittal,' 816 So.2d at 109, clearly indicated that the failure of the indictment to charge an appropriate mental state had not deprived the trial court of subject-matter jurisdiction over the vehicular-homicide charge." 42 So.3d at 150.
I believe that the silence of the Edwards Court on the jurisdictional issue while reaching the merits of the case does not amount to a holding that jurisdiction existed or that the indictment in Edwards was sufficient to charge an offense. "Arguments based on what courts do not say, logically speaking, are generally unreliable and should not be favored by the judiciary...." Ex parte James, 836 So.2d 813, 818 (Ala.2002); see also Haley v. Barbour County, 885 So.2d 783, 789 n. 7 (Ala.2004) (declining to hold that a previous case silently decided a threshold jurisdictional question by reaching the merits). Edwards does not support the proposition that an indictment charging vehicular homicide that fails to include a necessary culpable mental state is sufficient to charge an offense so long as it tracks the language of the vehicular-homicide statute.
Moreover, this Court need not overrule Edwards to recognize that the judgment of the Court of Criminal Appeals in this case is due to be affirmed. Even though A.L.L.'s indictment tracks the language of the vehicular-homicide statute, § 32-5A-192(a), Ala.Code 1975, the indictment does not specifically charge any of the culpable mental states the Edwards Court held are essential elements of vehicular homicide. Therefore, the indictment fails to charge A.L.L. with the crime of vehicular homicide as defined by Edwards. Nevertheless, the majority, quoting Rule 13.2(e), Ala. R.Crim. P., concludes that the indictment was "`sufficiently definite to inform [A.L.L.] of the offense charged,'" 42 So.3d at 150, merely because it tracked the language of the vehicular-homicide statute. Under the majority's approach, an indictment states a charge so long as it tracks *154 the language of a criminal statute  whether or not the statute, standing alone, is sufficient to inform the accused of the applicable culpable mental state. This approach conflicts with the Alabama Constitution, with state and federal due-process requirements, and with this Court's well established precedent.[6]
Further, as the Court recognized in Edwards, a defendant who "unlawfully and unintentionally" causes the death of another person while violating a traffic law when "the violation is the proximate cause of the death," § 32-5A-192(a), Ala.Code 1975, is not necessarily guilty of vehicular homicide. Edwards. That is, "unintentionally and unlawfully" causing the death of another person while violating a traffic law is not a crime unless the death was caused "knowingly," "recklessly," or with "criminal negligence."[7] Under Edwards, at least one of these specific culpable mental states is a necessary element of the offense of vehicular homicide, 816 So.2d at 99, even though these culpable mental states are not found in the vehicular-homicide statute and exist only by application of caselaw. The indictment here merely tracks the language of the statute, and, contrary to the majority's holding, fails to charge a crime because it fails to charge any required culpable mental state.[8]
In addition to Edwards, the majority cites Sullens v. State, 878 So.2d 1216, 1234 (Ala.Crim.App.2003), "and the cases cited *155 therein," in support of its conclusory holding that the indictment was "`sufficiently definite to inform [A.L.L.] of the offense charged.'" 42 So.3d at 150. The majority's reliance on Sullens is misplaced; Sullens was bad law. See Sullens, 878 So.2d at 1234 (Shaw, J., concurring in part and dissenting in part, joined by Cobb, J.). Furthermore, the cases cited in Sullens do not support the majority's decision today. For example, Sullens relied heavily on portions of Hunt v. State, 642 So.2d 999, 1022-26 (Ala.Crim.App.1993), aff'd, 642 So.2d 1060 (Ala.1994). In turn, Hunt relied on Ex parte Harper, 594 So.2d 1181 (Ala.1991). See Sullens, 878 So.2d at 1227 ("`We conclude that Ex parte Harper ... controls the result in this case.'" (quoting Hunt, 642 So.2d at 1026) (ellipsis in Sullens)). Harper is a plurality opinion that "raises many more questions than it answers." Hunt, 642 So.2d at 1026. Nevertheless, the Court of Criminal Appeals in Hunt followed Harper solely because that court "`is bound by the decisions of the Alabama Supreme Court. Ala.Code 1975, § 13-3-16.'" Sullens, 878 So.2d at 1227 (quoting Hunt, 642 So.2d at 1026). However, nearly 10 years after Harper was decided and 8 years after Hunt was decided, a majority of this Court decided Ex parte Hampton, 815 So.2d 569, 571 (Ala. 2000). Under Hampton, an indictment must specifically charge the element of mens rea, even if that element is not specifically set out in the Code section defining the offense the indictment tracks. Therefore, contrary to Sullens and the cases cited therein, Hampton provides the controlling rule of law in this case.
Finally, the State argues that A.L.L. never demonstrated that the failure to charge a culpable mental state in the indictment prejudiced his substantial rights. This argument is fundamentally unsound. Substantial rights are inherently violated when a citizen of this State is tried, convicted, and sentenced on the basis of an indictment that does not charge the citizen with a crime. See, e.g., Ala. Const. Art. I, § 8 ("[n]o person shall for any indictable offense be proceeded against criminally by information," except in circumstances not applicable in this case); Ex parte N.W., 748 So.2d 190, 191 (Ala.1999) ("The Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States require, among other things, that the State give a juvenile defendant written notice of the charges against her.").
In particular, the State argues that, because A.L.L. moved to dismiss the indictment for failure to state a charge, A.L.L. was not prejudiced because, the State argues, he was clearly aware that the crime of vehicular homicide required a culpable mental state and because he could have simply moved for a more definite statement under Rule 13.2(e), Ala. R.Crim. P., if he needed additional information to defend against the charge. I cannot join the majority in adopting this line of reasoning. See 42 So.3d at 150 ("Had A.L.L. felt that additional details concerning the alleged offense were needed, he could have made a motion for more definite statement. See Rule 13.2(e), Ala. R.Crim. P.").
Rule 13.2(e), Ala. R.Crim. P., exists to "provide[] a necessary safeguard for the defendant, in that ... the defendant can compel the state to submit additional details of the offense not required to be set out in the body of the indictment." Committee Comments to Rule 13.2, Ala. R.Crim. P.; cf. Lanier v. State, 733 So.2d 931, 936 (Ala.Crim.App.1998) ("An indictment must include all of the essential elements that constitute the offense, and it must not leave any element open to inference." (emphasis added)). The majority incorrectly concludes that a defendant ought to seek a more definite statement *156 under Rule 13.2(e) when the indictment omits a necessary element of the offense, which is required to be set out in the body of the indictment. Such a motion would, among other things, waive the defendant's substantial right to an indictment rendered by a grand jury and the right not to be tried and convicted on information composed by the prosecutor without the grand jury's involvement.[9]
Under the Alabama Constitution, only a grand jury may determine whether a person should be tried for an indictable offense. See Ala. Const.1901, Art. I, § 8. To make that ultimate determination, the grand jury must necessarily consider each of the essential elements of the charged offense. When the indictment omits any of those elements, neither the prosecutor nor the court may supply them. Permitting them to do so would improperly
"allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment [and] deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts [and legal allegations] not found by, and perhaps not even presented to, the grand jury which indicted him."
Russell v. United States, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).
Thus, a defendant cannot be forced to move for a more definite statement as to the essential elements of the crime, which are required to be set out in the body of the indictment to begin with. Cf. Rule 13.5(a), Ala. R.Crim. P. ("The court may permit a charge to be amended without the defendant's consent, at any time before verdict or finding ... if the substantial rights of the defendant are not prejudiced." (emphasis added)); and Committee Comments to Rule 13.2, Ala. R.Crim. P. (noting that a motion to amend filed under Rule 13.2(e), Ala. R.Crim. P., is appropriate for supplying additional "details of the offense not required to be set out in the body of the indictment").
Accordingly, I conclude that the indictment in this case fails to state a charge, that A.L.L.'s substantial rights were prejudiced by that failure, and that the judgment of the Court of Criminal Appeals, reversing the trial court's judgment adjudicating A.L.L. a youthful offender based on the underlying offense of vehicular homicide, should be affirmed. Therefore, I respectfully dissent.
MURDOCK, J., concurs.
MURDOCK, Justice (dissenting).
Respectfully, I dissent. I join Chief Justice Cobb's well written dissenting opinion, and I write separately to further explain my views.
Rules 15.2(a) and (d), Ala. R.Crim. P., divide the universe of defects in indictments into two categories: those that must be raised in a pretrial motion and those that may be raised at "any time during the pendency of the proceeding."[10] The latter *157 category includes defects that involve either a "lack of subject matter jurisdiction or the failure to charge an offense." Rule 15.2(a) (emphasis added); see also Rule 15.2(d). Because the defect in the indictment of A.L.L. was that of "failure to charge an offense," and because A.L.L. did file a motion to dismiss the indictment on that ground "during the pendency" of his trial, I conclude that the Court of Criminal Appeals correctly reversed the trial court's judgment of conviction based on that indictment.[11]
As to whether the indictment here did or did not "charge an offense"  in my view, the dispositive issue in this case  it is true that the indictment tracked the language of the vehicular-homicide statute crafted by our legislature, § 32-5A-192(a), Ala Code 1975. As Chief Justice Cobb documents in her dissenting opinion, however, it is well established that "`[a]n indictment is sufficient which substantially follows the language of the statute, provided the statute prescribes with definiteness the constituents of the offense.'" 42 So.3d at 154 n. 8 (quoting Ex parte Allred, 393 So.2d 1030, 1032 (Ala.1980)). Allred and numerous other Alabama and federal cases standing for this proposition are noted in Chief Justice Cobb's dissent at notes 6 and 8 and in the accompanying text. See also Shouldis v. State, 953 So.2d 1275, 1283 (Ala.Crim.App.2006) (noting that an indictment does not charge an offense if it does not "`"`apprise [the defendant] with a reasonable certainty of the nature of the accusation against him so that he may,'"'" among other things, "`"`prepare his defense'"'" (quoting Moore v. State, 697 So.2d 800, 802 (Ala.Crim.App. 1996), quoting other cases)).
In his special writing in Sullens v. State, 878 So.2d 1216, 1232-35 (Ala.Crim.App. 2003) (Shaw, J., concurring in part and dissenting in part), then Judge Shaw relied, inter alia, upon the opinion written by Justice Lyons for the Court in Ex parte Lewis, 811 So.2d 485 (Ala.2001). Although overruled by Ex parte Seymour, 946 So.2d 536 (Ala.2006), insofar as it spoke to the separate issue of subject-matter jurisdiction, the teaching of Ex parte Lewis as to *158 the long-standing and well established requirements for "stating an offense" under both Alabama and federal law remains intact. It is worth repeating:
"`Failure to charge an offense is the kind of defect involved in due process of law and it cannot be waived. Nelson v. State, 50 Ala.App. 285, 278 So.2d 734 (1973). Although the law does not compel a "ritual of words" in an indictment, "[t]he omission of an element of the crime, however, is not a mere formality that may be waived." United States v. Purvis, 580 F.2d 853, 857, 858, rehearing denied, 585 F.2d 520 (5th Cir.1978), cert. denied, 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979). "An indictment that fails to allege each material element of an offense fails to charge that offense." United States v. London, 550 F.2d 206, 211 (5th Cir.1977). "Failure to charge specific intent is but a particular aspect of the failure to charge an offense." Purvis, 580 F.2d at 858.
"`A defect in the indictment associated with an essential element of the offense which leaves the accused unaware of the nature and cause of the charge cannot be waived. Crews v. State, 374 So.2d 436, 442-43 (Ala.Crim.App.1979); Andrews v. State, 344 So.2d 533, 534-35 (Ala.Crim.App.), cert. denied, 344 So.2d 538 (Ala.1977). Where an indictment is void and does not charge an offense, this Court is bound to take notice of such a defect even in the absence of an objection. Edwards v. State, 379 So.2d 336, 338 (Ala.Crim.App.1979), cert. denied, 379 So.2d 339 (Ala.1980).'
"`The fact that the indictment refers to its statutory source cannot save it from being fatally deficient. The rule is that "the indictment must contain all the essentials to constitute the offense, explicitly charged, and that they must not be left to inference." State v. Seay, 3 Stew. 123, 131 (1830). The indictment cannot be aided by intendment, Poore v. State, 17 Ala.App. 143, 82 So. 627 (1919), and "nothing is to be left to implication or intendment, or to conclusion." Mastoras v. State, 28 Ala.App. 123, 126, 180 So. 113, cert. denied, 235 Ala. 519, 180 So. 115 (1938). A court is "without authority to add to, or take from, any of the material averments in the indictment, which speaks for itself and is conclusive." Crump v. State, 30 Ala.App. 241, 242, 4 So.2d 188 (1941).'"
Lewis, 811 So.2d at 488 (quoting Barbee v. State, 417 So.2d 611, 613-14 (Ala.Crim. App.1982) (emphasis added in Lewis)).
The indictment against A.L.L. failed to allege a required mens rea  under existing precedent, either criminal negligence, recklessness, or knowing conduct. See Ex parte Edwards, 816 So.2d 98 (Ala.2001). A.L.L. moved to dismiss that indictment during trial. Accordingly, I must conclude that the Court of Criminal Appeals correctly reversed the judgment of the trial court adjudicating A.L.L. a youthful offender based on that indictment.
I also write to express my disagreement with the main opinion's endorsement of the view stated by the Court of Criminal Appeals in Sullens v. State, 878 So.2d at 1228, that "`Edwards stands for the proposition that the trial court could have cured the [defect in the] indictment in its instructions to the jury.'" It seems to me that in most, if not all, circumstances a jury instruction either will be unnecessary to "cure" a defect in an indictment or, more importantly, it will be inadequate for that purpose. If there is a field of operation for the quoted proposition  i.e., a set of cases in which a jury instruction is both necessary and adequate to cure a defect in an indictment  it is not a field in which reside indictments  like the one at issue in *159 Sullens and in this case  that fail to state essential elements of criminal offenses.[12]
As noted, Rule 15.2(a), Ala. R.Crim. P., provides that "[o]bjections based on defects in the commencement of the proceeding or in the charge, other than lack of subject-matter jurisdiction or failure to charge an offense, may be raised only by pretrial motion as provided in Rule 15.3." If a "defect" that, under this rule, may be objected to only by way of a pretrial motion is not the subject of a such a motion, then that defect generally will have been waived and there will then be nothing for a jury instruction to "cure."
On the other hand, if a defendant files a pretrial motion objecting to a defect that is not jurisdictional in nature and that does not involve a failure to charge an offense, and the defendant prevails in that motion, then again there will be nothing left for a jury instruction to "cure." Alternatively, if the defendant files a pretrial motion objecting to such a defect and the trial court erroneously rejects the defendant's motion, and if the defect rises to the level of a reversible error, a proper jury instruction may not be adequate to "cure" the problem because the instruction comes only at the end of the trial. For the reason explained below, neither such a defect nor, a fortiori, a failure of an indictment to charge an offense, would be "curable" by a jury instruction that comes only at the end of a trial otherwise infected by the error.
In Ex parte Harper, 594 So.2d 1181, 1183 (Ala.1991), the Court stated that "[t]he crucial question ... is whether the indictment sufficiently apprises the accused with reasonable certainty of the nature of the accusation made against him so that he may prepare his defense, that he may be protected against a subsequent prosecution for the same offense." (Emphasis added.) In Hunt v. State, 642 So.2d 999, 1022 (Ala.Crim.App.1993), aff'd, 642 So.2d 1060 (Ala.1994), the Court of Criminal Appeals stated:
"`An indictment need only contain those facts and elements of the alleged offense necessary to inform the accused of the charge so that she may prepare a defense and invoke the Double Jeopardy Clause when appropriate. Courts will normally find an indictment insufficient only if it fails to state a material element of the offense.'"
(Quoting Lisa Landmeier and Alex S. Navarro, Project, Twenty-Second Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1991-1992, Indictments, 81 Geo. L.J. 1065, 1076-77 (April-May 1993) (footnotes omitted; emphasis added).)
These authorities all explain that an indictment must inform the defendant of the charge leveled against him so that he can prepare an adequate defense. Jury instructions necessarily come not only after a defense has been "prepared," but after the defense has been "presented." By definition, therefore, a jury instruction is unlikely to be able to cure a defect in an indictment that would otherwise rise to the level of a reversible error  and certainly not one consisting of the omission of a material element of the offense charged.
Finally, I note Chief Justice Cobb's challenges to this Court's construction of § 32-5A-192, *160 Ala.Code 1975, in Ex parte Edwards, supra. That case held that the existence of any one of three of the mental states defined in an introductory section of the Criminal Code, § 13A-2-2, Ala.Code 1975, other than intentional, is sufficient to constitute a violation of § 32-5A-192(a), despite the failure of the legislature to include any of those mental states in the text of § 32-5A-192(a). She states that this construction violates the tenet that "`the narrowest or strictest construction is mandated for criminal statutes.'" 42 So.3d at 151 (quoting Burnett v. State, 807 So.2d 588, 591 (Cobb, J., dissenting and citing Ex parte Mutrie 658 So.2d 347, 349 (Ala.1993))). Moreover, she sets forth a seemingly compelling argument for the unconstitutionality of § 32-5A-192(a) on the ground that the legislature did not prescribe a requisite culpable mental state for the crime. See 42 So.3d at 151-53 n. 3 and accompanying text. For all we know, the legislature might have had in mind something other than the lowest degree of mens rea, criminal negligence, defined in § 13A-2-2, Ala.Code 1975, or it might not have given the issue any consideration whatsoever. In either case, the argument can be made that this Court in Ex parte Edwards did indeed perform the legislative function of deciding what mental state or states would be sufficient to establish the crime of vehicular homicide when, in point of fact, the legislature had not spoken to that issue.
That said, Justice Johnstone's observation in Edwards as to the absence of an issue as to the constitutionality of § 32-5A-192 in that case is equally applicable to the present case. 816 So.2d at 109 (Johnstone, J., concurring specially).
NOTES
[*] Justice Shaw was a member of the Court of Criminal Appeals when that court considered this case.
[1] Even in light of the majority's refusal to address the constitutionality of § 32-5A-192, I believe that A.L.L. had a strong basis for presenting that argument in this case.
[2] Etowah County Comm'n v. Hayes, 569 So.2d 397, 398 (Ala. 1990) ("[T]he judicial branch of government is constrained not to substitute its judgment for that of the legislature and thus usurp the plenary power of that branch." (citing Finch v. State, 271 Ala. 499, 124 So.2d 825 (1960))); Town of Loxley v. Rosinton Water, Sewer & Fire Prot. Auth., 376 So.2d 705, 708 (Ala. 1979) ("[W]e may not amend statutes so as to make them express what we may conceive the legislature would have done or should have done. May v. Head, [210 Ala. 112, 96 So. 869 (1923)].... The purpose of interpretation is not to improve a statute but rather to explain the express language used in the statute. Lewis v. Hitt, 370 So.2d 1369 (Ala.1979).").
[3] The vehicular-homicide statute provides that one who "unlawfully and unintentionally" causes the death of another person while violating a traffic law is guilty of homicide. § 32-5A-192(a), Ala.Code 1975. I note the long history of special writings arguing that the statute is unconstitutional because it does not require a culpable mental state. See Ex parte Beck, 690 So.2d 346 (Ala. 1997) (Cook, J., concurring specially); Ex parte Knowles, 689 So.2d 832, 833-35 (Ala. 1997) (Cook, J., concurring specially); Burnett v. State, 807 So.2d at 589-93 (Cobb, J., dissenting); Edwards v. State, 816 So.2d 92, 92-98 (Ala.Crim. App.2000) (Cobb and Fry, JJ., dissenting), rev'd, 816 So.2d 98 (Ala.2001); Burnett v. State, 807 So.2d 573, 580-86 (Ala.Crim.App. 1999) (Cobb and Fry, JJ., dissenting), rev'd, 807 So.2d 586 (Ala.2001).

The legislature could easily correct the noted constitutional defect in the vehicular-homicide statute by adding language specifying applicable culpable mental states. Out of respect for the Alabama Constitution and the families of vehicular-homicide victims in Alabama, I urge the legislature to speedily remedy that defect. Burnett v. State, 807 So.2d at 585 (Fry, J., dissenting) ("[T]he hurt caused by a traffic fatality is due our eminent respect, but so is the Constitution of this State."). Absent legislative action, I urge the members of the Alabama State Bar to continue to place the issue of the constitutionality of the statute squarely before this Court, and I urge this Court to address the issue at its earliest opportunity.
[4] Alabama Dep't of Envtl. Mgmt. v. Town of Lowndesboro, 950 So.2d 1180, 1194 (Ala.Civ. App.2005) (plurality opinion by Murdock, J.) ("`For a case to be stare decisis on a particular point of law, that issue must have been raised in the action, decided by the court, and its decision made part of the opinion of the case; ... a case is not binding precedent on a point of law where the holding is only implicit or assumed in the decision but is not announced.'" (quoting 20 Am.Jur.2d Courts § 153 (1995))). Moreover, any such holding would defeat one of the primary purposes of requiring that the necessary elements of an offense be included in an indictment: "to inform the accused of the crime with which he is charged, so that he may prepare a defense if one is available." Ex parte Washington, 448 So.2d 404, 407 (Ala.1984) (emphasis added).
[5] In Seymour v. State, 946 So.2d 536 (Ala. 2006), this Court overturned well established precedent when it held that the failure to allege an essential element of an offense in an indictment is a not a jurisdictional defect. I was not a member of this Court when Seymour was decided. Had I been, I probably would not have agreed with the Court's analysis or with the reversal of such long-settled principles. However, it is not necessary to discuss every error in Seymour here. Seymour's most glaring defect is that it abrogates an express provision of the Alabama Constitution: "No person shall for any indictable offense be proceeded against criminally by information. ..." Ala. Const. 1901, Art. I, § 8.
[6] See Ex parte Hampton, 815 So.2d 569, 571 (Ala.2000) (holding that an indictment that merely tracked the language of the statute defining a crime was fatally defective because the statute, standing alone, did not include the applicable mens rea), cited in Sullens v. State, 878 So.2d 1216, 1234 (Ala.Crim.App. 2003) (Shaw, J., concurring in part and dissenting in part); Ex parte Lewis, 811 So.2d 485, 488 (Ala.2001) ("`"An indictment that fails to allege each material element of an offense fails to charge that offense." United States v. London, 550 F.2d 206, 211 (5th Cir. 1977). "Failure to charge specific intent is but a particular aspect of the failure to charge an offense." [United States v.] Purvis, 580 F.2d [853,] 858 [(5th Cir.1978) ].'" (quoting with approval Barbee v. State, 417 So.2d 611, 613 (Ala.Crim.App. 1982))), overruled on other grounds, Ex parte Seymour, 946 So.2d 536 (Ala.2006); Sullens, 878 So.2d at 1234 (Shaw, J., concurring in part and dissenting in part) ("In Alabama, an indictment that tracks the language of the statute is sufficient, but only if the statute prescribes with definitiveness the elements of the offense." (emphasis added)); see also Vaughn v. State, 880 So.2d 1178, 1193 (Ala.Crim.App.2003) (quoting Travis v. State, 776 So.2d 819, 836 (Ala.Crim.App. 1997), aff'd, 776 So.2d 874 (Ala.2000), quoting in turn Breckenridge v. State, 628 So.2d 1012, 1015-16 (Ala.Crim.App.1993)).
[7] For example, failing to dim one's headlights could blind the driver of an oncoming car and cause that driver to run his or her car off the road and crash, causing a fatality. The killing would undoubtably be "unintentional"; however, under Edwards, it would not constitute the crime of vehicular homicide unless the driver who failed to dim his or her headlights did so knowingly, recklessly, or with criminal negligence. See Edwards, supra; cf., e.g., Burnett v. State, 807 So.2d at 584 n. 3 (Cobb, J., dissenting) (listing examples of unintentional deaths caused by traffic violations so as to come with the vehicular-homicide statute, without a culpable mental state).
[8] See generally Ex parte Hampton, 815 So.2d 569 (Ala.2000); see also Ex parte Allred, 393 So.2d 1030, 1032 (Ala. 1980) ("An indictment is sufficient which substantially follows the language of the statute, provided the statute prescribes with definiteness the constituents of the offense." (emphasis added)); Barbee v. State, 417 So.2d 611, 613 (Ala.Crim.App. 1982) ("`Failure to charge specific intent is but a particular aspect of the failure to charge an offense.'" (quoting United States v. Purvis, 580 F.2d 853, 858 (5th Cir.1978))); cf. Hampton, 815 So.2d at 571 (holding that an indictment was fatally defective because the statute tracked by the indictment, though valid, omitted the element of mens rea and therefore did not "by itself ... adequately list all the elements of the offense for which [the defendant] was charged and convicted").
[9] See Ala. Const.1901, Art. I, § 8 ("[n]o person shall for any indictable offense be proceeded against criminally by information," except in circumstances not applicable in this case); Rule 13.1(a) and (b), Ala. R.Crim. P.(defining an "indictment" as "a written statement ... presented to the court by a grand jury, endorsed `A True Bill,' and signed by the foreman," and defining an "information" as "a written statement charging the defendant or defendants ..., made on oath, signed, and presented to the court by the district attorney... without action by the grand jury" (emphasis added)).
[10] Of course, if an indictment were to be so defective as to fail to invoke the jurisdiction of the criminal court, the deficiency in that indictment could be raised after, as well as during, the "proceeding."
[11] In her dissenting opinion, Chief Justice Cobb draws attention to the wording of § 8 of the Alabama Constitution of 1901. 42 So.3d at 156 n. 9 (Cobb, C.J., dissenting). Largely on the strength of that wording  "[n]o person shall for any indictable offense be proceeded against criminally by information"  it may be questioned whether this Court correctly concluded in Ex parte Seymour, 946 So.2d 536 (Ala.2006), that an Alabama court has jurisdictional authority to "proceed against" a defendant for an indictable offense requiring proof of a material element not passed upon by a grand jury. My concern for the correctness of that conclusion is heightened by the apparently sound and well supported analysis offered by Justice Shaw, then a member of the Court of Criminal Appeals, in his special writing in Sullens v. State, 878 So.2d 1216, 1232 (Ala.Crim.App.2003) (Shaw, J., concurring in part and dissenting in part, joined by then Judge Cobb), relying inter alia upon the analysis of Justice Lyons writing for the Court in the then, and still, relatively recent case of Ex parte Lewis, 811 So.2d 485 (Ala.2001), as to what is required of an indictment if it is to "charge an offense."

Of course, the question whether the trial court had jurisdiction to proceed against A.L.L. under an indictment that was missing an essential element of the alleged crime need not be addressed in order to decide that the Court of Criminal Appeals correctly reversed the trial court's judgment. Again, Rules 15.2(a) and (d) provide that a defendant may object to either the lack of subject-matter jurisdiction or to the failure of the State to "charge an offense," at any time during the trial (rather than only by pretrial motion), which is what A.L.L. did. The question of jurisdiction would appear to be pertinent, however, to the ability of the State to reindict A.L.L. following such a reversal. See Ex parte Cole, 842 So.2d 605 (Ala.2002).
[12] I note that Sullens itself was a plurality opinion, with only two members of the Court of Criminal Appeals subscribing to its analysis, one judge concurring in the result, and two judges dissenting in part and expressly declining to join the view expressed in the lead opinion as to this issue. See Sullens (Wise, J., concurring in the result without writing; Shaw, J., concurring in part and dissenting in part, with opinion, joined by Cobb, J.)